C. M. McMAHEN & SONS v. LOUISVILLE & N. R. CO.

(Circuit Court of Appeals, Fifth Circuit. January 6, 1927.)

No. 4916.

1. Carriers ⟨⟩85—Carrier, required to notify consignee and deliver on shipper's order, held justified in refusing to deliver until presentation of order (Comp. St. § 8604aaa et seq.).

Where a letter from shipper to carrier directed notification of consignee and delivery on order of shipper, the carrier was warranted in refusing to make delivery until such order was presented, in view of Act Aug. 29, 1916, c. 415 (Comp. St. § 8604aaa et. seq.).

2. Customs and usages ⟨⟩13—Custom in harmony with contract becomes part of contract, and governs place, time, and manner of delivery.

A custom as to making delivery, which is in harmony with the contract of shipment, and is not unreasonable nor contrary to public policy, becomes a part of the contract, and governs the place, time, and manner of making delivery.

3. Carriers ⟨⟩116—Customs and usages ⟨⟩8—Carrier held justified in following custom as to unloading, and not liable for damage to shipment while awaiting delivery.

Where delivery of a carload of cucumbers was to be made at a New York pier, which was a delivery point for fruit and vegetables, but without railroad track or facilities for storage of cars, which were brought across the river on floats, the carrier was justified in following the well-established custom by unloading the shipment into the section of the pier assigned to the consignee, though retaining possession while awaiting shipper's order for delivery, and is not liable for damage to the cucumbers during the delay.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Action at law by C. M. McMahen & Sons, a partnership, against the Louisville & Nashville Railroad Company. Judgment for defendant, and plaintiffs bring error. Affirmed.

M. B. Grace, of Birmingham, Ala., for plaintiffs in error.

John S. Stone, of Birmingham, Ala. (McClellan, Rice & Stone and J. Kirkman Jackson, all of Birmingham, Ala., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is a suit by McMahen & Sons against the initial carrier, the Louisville & Nashville Railroad Company, for damage to four carloads of cucumbers, caused by delay in delivery at point of destination after the cucumbers had been taken out of refrigeration. It was undisputed that the cucumbers deteriorated in value. The only question in the case is whether the damage was attributable to the fault of the delivering carrier, Pennsylvania Railroad Company.

On May 20, 1922, plaintiffs bought the cucumbers and shipped them from Springhill and Robertsdale, Ala., to themselves at Birmingham. On May 22 they caused the shipments to be diverted by orders, which were accepted by defendant, first to Cincinnati, and then to Pier 29, New York City, and the Associated Fruit Company to be substituted as consignee, and by separate letter as to each carload shipment directed the freight agent of the Pennsylvania as follows: "On arrival of car [describing it] containing cucumbers consigned to me or my order, please notify Associated Fruit Company. Allow inspection and deliver same on my order, which I am sending, attached to draft, to the above

party." Those letters were received by the addressee on the 25th. The shipments arrived at destination on the 26th, but too late for that day's market. The agent of the Pennsylvania immediately notified the Associated Fruit Company, and unloaded the cucumbers at Pier 29, in a section set aside for the Associated Fruit Company, in the early morning hours of Saturday, May 27, but refused to make delivery because the Fruit Company had not received, and therefore could not produce, the orders referred to in the letters of plaintiffs. The cucumbers remained on the pier until Monday morning, May 29, when they were delivered under instructions from the shippers. Each bill of lading bound the carrier to carry to its usual place of delivery at destination, and provided for a reasonable charge for detention after the car had been held for 48 hours.

Pier 29 is located on the North River in the downtown business section of New York City. It is not connected with any line of railroad track, and has no facilities for storage of cars. The sole access of carload shipments to it is by means of floats, which transport cars across the river from Jersey City. It is a delivery point for fruits and vegetables, which are sold by consignees from certain sections assigned to them, and removed by the purchasers immediately after sale. The evidence discloses without conflict that there is a well-established custom of long standing to the following effect: All carload shipments of fruits and vegetables over the Pennsylvania Railroad, consigned to this pier, are posted on a bulletin board, unloaded, and placed in the sections assigned to the various consignees in the order of their arrival, without awaiting orders from the consignees. When the cars are unloaded they are immediately carried back across the river to Jersey City. If a consignee does not desire a shipment to be handled in this way, it is usual for him to name Jersey City as the destination, or to notify the railroad company in advance. Plaintiffs, as well as the Associated Fruit Company, had full knowledge of this custom. Upon proof of it, and at the close of all the evidence, the District Judge directed a verdict and entered judgment for defendant.

[1] Plaintiffs contend in the first place that delivery of their shipments should have been made on Saturday morning, May 27, because the Associated Fruit Company was named as consignee, and their letters only related to shipments in which they themselves were consignees. But as these letters were from shippers who were known to have been the owners, and only authorized delivery upon the surrender of orders attached to drafts, we are of opinion that the freight agent of the Pennsylvania Railroad Company was amply justified in withholding delivery until such orders were presented. Southern Express Co. v. Dickson, 94 U. S. 549, 24 L. Ed. 285; Act Aug. 29, 1916, c. 415, 39 Stat. 538 (Comp. St. § 8604aaa et seq.).

[2] The principal, though somewhat contradictory, contention of plaintiffs, is that it was the duty of the delivering carrier to keep the cucumbers in the refrigerator cars until the orders mentioned in the letters of plaintiffs were produced and surrendered by the Associated Fruit Company, and that a custom, however well known, is inadmissible which does not tend to establish one of the recognized exceptions to the common-law liability of the carrier. It is pointed out that under the bills of lading the carrier is liable as such for a period of 48 hours, allowed for unloading, after notice of the arrival of shipments at destination. Of course, a custom that is in conflict with the terms of the contract of a carrier cannot be relied on; but, if such custom be in harmony with the contract, and is not unreasonable or contrary to public policy, it becomes a part of the contract and governs the place, time, and manner of making delivery. Hostetter v. Park, 137 U. S. 30, 11 S. Ct. 1, 34 L. Ed. 568; Constable v. National Steamship Co., 154 U. S. 51, 14 S. Ct. 1062, 38 L. Ed. 903; 4 Elliott on Railroads, § 2290.

[3] The custom here shown was not in conflict with any of the provisions of the bills of lading. The failure to object to unloading was tantamount to an order to unload. The custom is not unreasonable, or opposed to public policy; but the method of delivery worked out by the delivering carrier and the shippers, or their representatives, is for their mutual benefit, in that it lessens delay and confusion in a highly congested market. Plaintiffs knew of the custom, and, knowing of it, they, as well as the carrier, were bound by it. In effect they agreed that their shipments should be unloaded immediately upon arrival, or as soon as possible under the circumstances.

The judgment is affirmed.