### STANDARD BRANDS, Inc., v. EASTERN S. S. LINES, Inc.
### No. 323.

Circuit Court of Appeals, Second Circuit.

June 20, 1938.

Earl Appleman, of New York City, for appellant.

Haight, Griffin, Deming & Gardner, of New York City (Wharton Poor and James McKown, Jr., both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff shipped 500 bags of green coffee from New York City on October 24, 1933, to itself as consignee in Boston, on the S. S. Acadia of the defendant. The shipment was under a uniform bill of lading which provided that the carrier should be liable for any loss or damage as at common law with certain stated exceptions of which we are now concerned with one to the effect that the carrier should be liable only as warehouseman "for loss, damage or delay caused by fire occurring after the expiration of the free time allowed by tariffs lawfully on file (such free time to be computed as therein provided) after notice of the arrival of the property at destination or at the port of export (if intended for export) has been duly sent or given, and after placement of the property for delivery at destination, or tender of delivery of the property to the party entitled to receive it, has been made * * *".

The Acadia arrived at Boston at about 7 A.M., and docked as was customary at India Wharf. Another wharf of the defendant, Central Wharf, was located on the other side of the slip in which the Acadia was moored and this shipment of coffee was discharged on the outer end of Central Wharf some 130 feet from India Wharf. Defendant's ships, docked as was the Acadia, at times discharged part of their cargoes on India Wharf and part on Central Wharf.

The delivery office of the defendant was located on India Wharf and when freight was discharged at that wharf or at Central Wharf or at Foster Wharf, another wharf of the defendant to the south of India Wharf, it was customary to send arrival notices to consignees showing the freight on hand at India Wharf. Upon inquiry by consignees at the delivery office there, they would be told at which of the above mentioned wharves they would find their freight. This practice was well known to the plaintiff, who had at times requested more definite information in order to save time in taking freight away. It knew that an arrival notice that freight was on hand at India Wharf was not to be taken literally as to the location of the freight but meant that it had arrived in Boston and might be at any of the wharves mentioned.

Sometime in the forenoon of October 27th and after the Acadia docked, a clerk of the defendant called the plaintiff's Boston office by telephone and told some one there that, "We have 500 bags of coffee on the steamer 'Acadia' this morning". This was followed by sending the plaintiff a written arrival notice covering this and other cargo consigned to it and having in its printed part the statement that the ship "is now discharging cargo at her pier and according to her manifest has on board consigned to you the freight described hereon." This notice bore a stamped notation:

"Freight on hand India Wharf

Free time expires 3 P.M. Nov. 1, 1933".

Two lines had been drawn through the "Nov. 1" and above had been placed the figures "10/31/31" to change the date from

the first of November to the last day in October of 1933, for the figures indicating the change of the year to 1931 were obviously an error.

After receiving this notice, the plaintiff was engaged in removing coffee from Indian Wharf and before it actually knew that this 500-bag shipment was on Central Wharf a fire occurred there on November 7, 1933 which caused damage to that coffee for the recovery of which the plaintiff brought this suit.

■ The decisive issue is whether the notice of arrival was sufficient to start the free time running on October 27, 1933. If so, it is not disputed but that before the fire occurred the defendant's liability became only that of a warehouseman or that as such no suit can be maintained against it for the damage. If not, the common carrier liability of the defendant had not been changed and the plaintiff may recover. Michigan Central R. Co. v. Mark Owen & Co., 256 U.S. 427, 41 S.Ct. 554, 65 L.Ed. 1032.

The trial was by a jury of one with each party moving for a directed verdict. The trial judge held the notice sufficient and directed a verdict for the defendant. The plaintiff has appealed from the judgment entered on that verdict.

■ Before considering whether the arrival notice was sufficient as such it is necessary to notice exceptions taken to the introduction of evidence to show that the defendant knew that the words stamped on the notice did not necessarily mean that the shipment was on hand India Wharf but instead that it might be at any one of the three wharves above mentioned and that to ascertain the wharf where it was inquiry was to be made concerning it at India Wharf. It is said that such evidence violated the well established rule that a written instrument which is unambiguous is to be read as written in so far as its meaning at the time of its execution is concerned. The position is apparently taken that, in effect, the requirements of a bill of lading were altered by evidence of a contrary custom or practice of the parties. We cannot find any such error. An arrival notice was given. It duly informed the consignee that the shipment had arrived at destination. That was Boston. The additional information that the freight was "on hand at India Wharf" might have deceived a consignee as to placement for delivery at destination if that consignee did not know that those words did not necessarily mean physically at the

wharf stated but instead did mean that delivery was to be taken through the defendant's office there whether the freight was actually at that wharf or at another. The evidence was not received to vary any statutory, or bill of lading, notice but to show that the defendant understood that the words "on hand India Wharf" covered freight also physically at Central Wharf across the slip. The evidence simply explained a phrase customarily employed in the dealings between these parties and disclosed the meaning both attributed to it. For this purpose it was properly received. Reed v. Insurance Co., 95 U.S. 23, 24 L.Ed. 348. See, also, C. M. McMahen & Sons v. Louisville & N. R. Co., 5 Cir., 16 F.2d 698; Nicoll v. Pittsvein Coal Co., 2 Cir., 269 F. 968.

■ We accordingly treat the arrival notice as though it had expressly stated that the freight was at Central Wharf. But it is argued that even so it was given prematurely. That contention, however, seems not to be well grounded. The coffee was discharged October 27th and, though it is possible that the notice sent that morning was before the actual discharge, the tariff, under which the shipment was made, allowed free time computed from 7 o'clock in the morning first occurring after the freight was discharged. The longest free time allowable was six days as for imported freight. The tariff required the notice to be given within twenty-four hours of arrival. It was given within that time after the freight arrived at the dock at Boston and more than six days elapsed between 7 A.M. on the morning after the notice was given and the day it was damaged by fire. During all this time it was lying placed for delivery on Central Wharf.

■ Finally, it is pointed out that the notice erroneously stated that the free time expired before it actually did. While that is so, it is immaterial in view of the fact that it did not mislead the plaintiff. Of course it could not have diminished the actual free time to which the consignee was entitled. It could not have induced the consignee to let the coffee remain there beyond the actual expiration date in the erroneous belief that the time had not expired and there is no proof whatever to indicate that the consignee would have removed it after October 31st and before the free time ran out had the expiration date been correctly stated.

Judgment affirmed.