## REED *v.* INSURANCE COMPANY.

1. A policy of insurance on a vessel at and from Honolulu, *via* Baker's Island, to a port of discharge in the United States, contained a clause, " the risk to be suspended while vessel is at Baker's Island loading."  *Held,* in view of the circumstances which must be supposed to have appeared to the parties at the time of making the contract, that the meaning of the clause is that the risk was to be suspended while the vessel was at Baker's Island for the purpose of loading, whether actually engaged in the process of loading or not.

2. Although a written agreement cannot be varied by proof of the circumstances out of which it grew, and which surrounded its adoption, they may be resorted to for the purpose of ascertaining its subject-matter, and the standpoint of the parties in relation thereto.

3. *Quære,* Can a demand arising out of contract be enforced by a libel *in personam* in admiralty when a suit to recover it, if brought in a State court of concurrent jurisdiction, would be barred by the Statute of Limitations ?

APPEAL from the Circuit Court of the United States for the District of Maryland.

The circumstances of this case, as gathered from the pleadings and evidence, particularly the agreed statement made by the parties themselves, are substantially as follows : —

In November, 1867, the libellant, Samuel G. Reed, of Boston, was owner of the ship "Minnehaha," then lying at Honolulu, in the Sandwich Islands, and about to sail from that place in ballast *via* Baker's Island, with the intention of there taking in a cargo of guano, to a port of discharge in the United States. Baker's Island is a small rocky island in mid-ocean, nearly under the equator, and about two thousand miles south-westerly from the Sandwich Islands, having no harbor or anchorage, and only frequented for its guano.   When ships arrive there, they are moored in the open sea, in an exposed and perilous position.   The mooring is effected by means of a heavy stationary anchor, weighing five thousand six hundred pounds, fastened to a coral reef in about one hundred fathoms of water, to which anchor a large buoy is attached by a heavy pendant chain.   This chain is braced by two other chains, each over a thousand feet long, attached to anchors fastened to another coral reef nearer to the island.   By still another chain the ship is moored to the first-mentioned pendant chain as long as she remains at the island ; and her cargo is sent aboard from the

island in small boats. The place is subject to strong currents and heavy gales, and vessels are, in consequence of the weather, frequently obliged to put to sea while loading.

On the 6th of January, 1868, the libellant, through a firm of insurance brokers in New York, made application by mail to the Merchants' Mutual Insurance Company of Baltimore for insurance on the said ship "Minnehaha," in the following terms : —

" Application for insurance is hereby made by Johnson & Higgins, as agents, in the name of Samuel G. Reed, account of whom it may concern. Loss, if any, payable to them or order. For [$5,000, at seven per cent net] on ship 'Minnehaha,' valued at $60,000, at and from Honolulu, *via* Baker's Island, to a port of discharge in the United States not east of Boston, with liberty to use Hampton Roads for orders; the risk to be suspended while vessel is at Baker's Island loading."

This application was enclosed in the following letter : —

" OFFICE OF JOHNSON & HIGGINS, &c.,
" 87 Wall Street, New York,
" Jan. 6, 1868.

" GEORGE R. COALE, Esq., *Secretary :*

" DEAR SIR, — Enclosed please find two applications for Samuel G. Reed : viz., one on the ' Minnehaha' (other companies here are averse to Baker's Island risks, and for that reason the owners suspend the risk while at Baker's Island loading. The Atlantic have taken a large line on vessel and freight at seven per cent, with scrip) ; also, one on the 'Guiding Star,' now loading under inspection of Captains Ellis and Story, for underwriters. Please let us know how much your companies will take on each, and the lowest respective rates. Should like to hear by telegraph,

" Yours respectfully,
" JOHNSON & HIGGINS,
" Per TOOKER."

In pursuance of this application, the company issued the policy on which the present suit is brought, the operative clause of which is in these words : —

" The Merchants' Mutual Insurance Company of Baltimore have insured, and do hereby insure, agreeably to order, Samuel G. Reed, for account of whom it may concern, lost or not lost, at and from Honolulu, *via* Baker's Island, to a port of discharge in the United

States not east of Boston, with liberty to use Hampton Roads for orders, the risk to be suspended while vessel is at Baker's Island loading, $5,000, upon the body, tackle, &c., of the good ship 'Minnehaha.'"

The ship sailed in ballast from Honolulu the 7th of November, 1867, and arrived near Baker's Island on the afternoon of the twentieth day of that month. She came to her mooring near the island in safety; shortly after which a heavy gale and heavy surf arose, and continued with violence until the 3d of December, when the ship parted her moorings, and was totally wrecked and lost. At no time after her arrival at that island was it possible to discharge ballast or receive cargo, or commence the process of loading, or even the preparation for loading.

Proof of loss and of interest and adjustment was duly presented to the company, and payment demanded therefor and refused.

On May 20, 1872, Reed exhibited his libel in the District Court of the United States for the District of Maryland against said company. That court upon hearing dismissed the cause; and the Circuit Court having affirmed the decree, the libellant brought the case here.

The Statute of Limitations in force in Maryland provides as follows : —

"All actions of account, actions of assumpsit or on the case, actions of debt on simple contract, or for rent in arrears, detinue, and replevin, all actions for trespass for injuries to real or personal property, shall be commenced or sued within three years from time the cause of action accrues."

*Mr. Frederick E. Bryant* and *Mr. Charles B. Goodrich* for the appellant.

1. The policy covers the voyage during which the loss occurred, and the appellant is *prima facie* entitled to recover the amount of such loss. The vessel was insured from Honolulu, *via* Baker's Island, to her port of discharge ; and the intention of the assured and insurer that she should stop there is thus clearly manifested.

2. The excepting clause, " the risk to be suspended while the vessel is at Baker's Island loading," has no bearing upon

the rights of the parties; because no loading was made or attempted. The appellee gives to that clause a broader signification than its terms justify, and makes it include a suspension of the risk before the process of loading began. If it be ambiguous (which we deny), it should receive a construction least favorable to the company. 2 Parsons, Contr. 19 (ed. 1860); *Dann* v. *Spurrier*, 3 B. & P. 399; *Doe* v. *Dixon*, 9 East, 15; *Throckmorton* v. *Wacy*, Plowd. 154; *Melvin* v. *Prop., &c. on Merrimack River*, 5 Met. (Mass.) 27. Usage is never admissible to contradict what is plain. *Hearne* v. *Marine Insurance Co.*, 20 Wall. 492; *Haskins* v. *Warren*, 115 Mass. 535; *Dickenson* v. *Gay*, 7 Allen (Mass.), 34; *Black* v. *Bachelder*, 120 Mass. 171. Nothing can be plainer than that the risk was to be suspended only while the vessel was at Baker's Island *loading*. Any other construction would do violence to the rule that full force and effect should be given to every word of a written contract. 2 Parsons, Contr. 16, 17 (ed. 1860); *Evans* v. *Sanders*, 8 Port. (Ala.) 497; *Stratton* v. *Pettit*, 16 C. B. 520.

The statement made in the letter of Johnson & Higgins, which accompanied the application for the policy, that the New York companies were averse to Baker's Island risks, &c., even if fraudulently made, which it was not, is immaterial, and does not vitiate the insurance, as neither the appellee nor its agent was thereby influenced to take the risk. 1 Phillips, Ins., sects. 539–541; *Salem India-Rubber Co.* v. *Adams*, 23 Pick. (Mass.) 256; 1 Parsons, Mar. Ins. 465; *Flinn* v. *Tobin*, 1 Moo. & M. 367; *Flinn* v. *Headlam*, 9 B. & C. 693.

In regard to the position taken on the other side, that the lapse of time bars this suit, it is submitted that statutes of limitation are, like all statutes in derogation of the common law, construed strictly. This, moreover, is a proceeding in admiralty. The act of Maryland cannot affect the *status* of the appellant in a court of the United States, nor even furnish any analogy to control the exercise of its jurisdiction. The company has not been injured by delay, and sustaining the bill will not produce public inconvenience. The imputed laches, therefore, furnish no legal or equitable ground for depriving him of his right to a determination of the case upon its merits. *Pickering* v. *Lord Stamford*, 2 Ves. Jr. 583; *Allore* v. *Jewell*,

94 U. S. 506; *Bingham* v. *Wilkins*, Crabbe, 50; *Brown* v. *Jones*, 2 Gall. 477; *Willard* v. *Dorr*, 3 Mas. 95; *The Key West*, 14 Wall. 653.

Mr. John H. Thomas, contra.

The letter of Johnson & Higgins to the agent of the appellee was intended to produce, and did produce, on his mind the impression that the New York companies had excluded the risks of Baker's Island by suspensions coextensive with that mentioned in the application. If they had not, the policy was obtained by misrepresentation, and is null and void. 1 Parsons, Mar. Ins. 409, 410.

The policy without the suspending clause would not have covered the vessel at Baker's Island, but only during her voyage *via* that island. When property is intended to be covered by a marine insurance at a place, not constituting a part of the voyage, apt and express words adequate to that purpose are always used; as, for example, " *at* and from," " to, *at*, and from," " to, *while there*, and thence," " with liberty to *touch at*," " with liberty *to touch and stop at*," " with liberty to *touch and load* at," &c. 1 Phillips, Ins., sects. 928, 1005, 1014; 2 Parsons, Mar. Ins. 16, and notes; Park, Ins. 388; *Barber* v. *Fleming*, 5 Law Rep. Q. B. 59; *Stitts* v. *Wardell*, 2 Esp. 610; *Sheriff* v. *Potts*, 5 id. 96; *United States* v. *The Paul Shearman*, 1 Pet. C. Ct. 98–104; *Cross* v. *Shuttliffe*, 2 Bay (S. C.), 220.

The words " *via* Baker's Island " are descriptive of the voyage. Without them the vessel would have been obliged to pursue the accustomed route. Passing that island, if unusual and unnecessary, and, *a fortiori*, stopping, loading, or even touching there, would have been a deviation, causing a forfeiture of the policy. The words suspending the risk, " while at Baker's Island loading," were introduced to limit and not enlarge the operation of the instrument. If the intention had been to suspend the risk " while loading," the collocation of them would have been " while loading at Baker's Island." Place is the controlling idea of the words as used; " loading " is subordinate. It indicates the purpose of being at the place, not the terms of the risk. *Devoux* v. *J'Anson*, 5 Bing. N. C. 539.

If the construction here contended for is not the natural one,

looking at the policy alone, it is proper to invoke, in aid of its interpretation, the letter enclosing the application, and therefore a part of it. Looking at the entire instrument, the object sought to be accomplished, and all the circumstances of the case, it seems impossible to resist the conclusion that the words in the clause were employed to describe the place at which the risk was to be suspended, and the purpose for which the vessel was to be there, without reference to the mode in which her crew might be employed. Courts have gone so far in this line of interpretation as to decide, that, although the literal and grammatical construction of a policy would make it attach only on goods "at" a designated place, "it may attach although the ship be at another place, if the policy and all the circumstances make it certain that the name of the place is either surplusage or a mere term of description." 2 Parsons, Mar. Ins. 45.

If the name of a place can be so rejected, for the purpose of carrying into effect the intention of the parties, why, on the same principle, may not a word designating only the contemplated employment of the crew at a place be rejected? Id. 50.

Exceptions in a policy must always be construed according to the actual intention of the parties, so as to carry the contract into effect. 1 Parsons, Mar. Ins. 64, note 1; id. 623; *Cross* v. *Shuttliffe*, 2 Bay (S. C.), 23; *Yeaton* v. *Fry*, 5 Cranch, 335. When the policy was issued, it is clear that neither Johnson & Higgins nor the appellant considered that it covered the vessel when at the island, whether she was engaged in loading or not. If there is any doubt as to the true meaning of the instrument, their construction of it, concurring with that of the appellee, is entitled to great and conclusive weight. *Railroad Company* v. *Trimble*, 10 Wall. 367. Resort may be properly had to the testimony of experts to aid in interpreting the clause of exemption. 1 Parsons, Mar. Ins. 77, 83, 627, 628; *Salmon Falls Man. Co.* v. *Goddard*, 14 How. 447; *Grey* v. *Harper*, 1 Story, 574; *Shaw* v. *Wilson*, 9 Cl. & Fin. 555; *Smith* v. *Wilson*, 3 Barn. & Ad. 728; *Williams* v. *Wood*, 16 Md. 251; *Merchants' Bank* v. *State Bank*, 10 Wall. 667; 2 Taylor, Evid., p. 1009, 1010, sects. 1060, 1062, 1068; 1 Greenl. Evid., sects. 280–282.

This suit, when brought, was barred by the Statute of Limitations of Maryland.    1 Md. Code, p. 395.

In cases of concurrent jurisdiction, courts of equity adopt the period of limitation prescribed for courts of law. . *Lewis* v. *Marshall*, 5 Pet. 470; *Peyton* v. *Smith*, id. 485; *Miller* v. *McIntyre*, 6 id. 61 ; *Bank of United States* v. *Daniel*, 12 id. 56 ; *Elmendorff* v. *Taylor*, 10 Wheat. 152; *Thomas* v. *Harvies's Heirs*, id. 149, 150; *Burke* v. *Smith*, 16 Wall. 401; *Hirtle* v. *Schwartz*, 3 Md. 383 ; *Teackle* v. *Gibson*, 8 id. 87 ; *Knight* v. *Brown*, 14 id. 7; *Dugan* v. *Gittings*, 3 Gill (Md.), 161.

Admiralty courts are chancery courts of the sea, and are governed by chancery rules in the administration of their remedies.    *Packard* v. *Sloop Louisa*, 2 Woodb. & M. 60 ; *Brig Sarah Ann*, 2 Sumn. 212; *Pittman* v. *Hooper*, 3 id. 305 ; *Willard* v. *Dorr*, 3 Mas. 163 ; *Joy* v. *Allen*, 2 Woodb. & M. 304.

*The Key City*, 14 Wall. 653, was a proceeding *in rem* exclusively of admiralty jurisdiction:    The principles there enunciated are expressly confined to such a case.    It establishes nothing at variance with what is here contended for.    In a matter solely within their cognizance, courts of equity do not inflexibly adhere to the common-law period of limitation. *Wisner* v. *Barnet*, 4 Wash. 640 ; *Kane* v. *Bloodgood*, 7 Johns. (N. Y.) Ch. 90.    Nor do the admiralty courts ; but that doctrine has no application to this suit.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This is a cause of contract, civil and maritime, commenced by a libel *in personam* by Samuel G. Reed, the appellant, against the Merchants' Mutual Insurance Company of Baltimore, the appellee, to recover $5,000, the amount insured by the latter on the ship "Minnehaha," belonging to the libellant. The policy was dated the fourteenth day of January, 1868, and insured said ship in the amount named, lost or not lost, at and from Honolulu, *via* Baker's Island, to a port of discharge in the United States not east of Boston, with liberty to use Hampton Roads for orders, "the risk to be suspended while vessel is at Baker's Island loading."    The ship was lost at Baker's Island, where she had gone for the purpose of loading, on the third day of December, 1868.    The defence was that

the loss occurred whilst the risk was suspended under the clause above quoted ; also laches by reason of the delay in commencing suit, being more than four years after the cause of action accrued. .

This case, upon the merits, depends solely upon the construction to be given to the clause in the policy before referred to, namely, " the risk to be suspended while vessel is at Baker's Island loading ; " and turns upon the point whether the clause means, while the vessel is at Baker's Island *for the purpose of loading*, or while it is at said island *actually loading*. If it means the former, the company is not liable; if the latter, it is liable.

A strictly literal construction would favor the latter meaning. But a rigid adherence to the letter often leads to erroneous results, and misinterprets the meaning of the parties. That such was not the sense in which the parties in this case used the words in question is manifest, we think, from all the circumstances of the case. Although a written agreement cannot be varied (by addition or subtraction) by proof of the circumstances out of which it grew and which surrounded its adoption, yet such circumstances are constantly resorted to for the purpose of ascertaining the subject-matter and the stand-point of the parties in relation thereto. Without some knowledge derived from such evidence, it would be impossible to comprehend the meaning of an instrument, or the effect to be given to the words of which it is composed. This preliminary knowledge is as indispensable as that of the language in which the instrument is written. A reference to the actual condition of things at the time, as they appeared to the parties themselves, is often necessary to prevent the court in construing their language, from falling into mistakes and even absurdities. On this subject Professor Greenleaf says: " The writing, it is true, may be read by the light of surrounding circumstances, in order more perfectly to understand the intent and meaning of the parties; but, as they have constituted the writing to be the only outward and visible expression of their meaning, no other words are to be added to it, or substituted in its stead. The duty of the courts in such cases is to ascertain, not what the parties may have secretly intended, as contradistinguished from what their words express, but what is the meaning of the

words they have used." 1 Greenl. Evid., sect. 277. Mr. Taylor uses language of similar purport. He says: " Whatever be the nature of the document under review, the object is to discover the intention of the writer as evidenced by the words he has used ; and, in order to do this, the judge must put himself in the writer's place, and then see how the terms of the instrument affect the property or subject-matter. With this view, extrinsic evidence must be admissible of all the circumstances surrounding the author of the instrument." Taylor, Evid., sect. 1082. Again he says: " It may, and indeed it often does, happen, that, in consequence of the surrounding circumstances being proved in evidence, the courts give to the instrument, thus relatively considered, an interpretation very different from what it would have received, had it been considered in the abstract. But this is only just and proper ; since the effect of the evidence is not to vary the language employed, but merely to explain the sense in which the writer understood it." Id., sect: 1085. See *Thorington* v. *Smith*, 8 Wall. 1, and remarks of Mr. Justice Strong in *Maryland* v. *Railroad Company*, 22 id. 105.

The principles announced in these quotations, with the limitations and cautions with which they are accompanied, seem to us indisputable ; and, availing ourselves of the light of the surrounding circumstances in this case, as they appeared, or must be supposed to have appeared, to the parties at the time of making the contract, we cannot doubt that the meaning of the words which are presented for our consideration is that the risk was to be suspended while the vessel was at Baker's Island for the purpose of loading, whether actually engaged in the process of loading or not. Taking this clause in absolute literality, the risk would only be suspended when loading was actually going on. It would revive at any time after the loading was commenced, if it had to be discontinued by stress of weather, or any other cause. It would even revive at night, when the men were not at work. This could not have been the intent of the parties. It could not have been what they meant by the words ".while vessel is at Baker's Island loading." It was the place, its exposure, its unfavorable moorage, which the insurance companies had to fear, and the risk

of which they desired to avoid. The whole reason of the thing and the object in view point to the intent of protecting themselves whilst the vessel was in that exposed place for the purpose referred to, not merely to protect themselves whilst loading was actually going on. Her visit to the island was only for the purpose of loading; as between the contracting parties, she had no right to be there for any other purpose; and, supposing that they intended that the risk should be suspended whilst she was there for that purpose, it would not be an unnatural form of expression to say, "the risk to be suspended while vessel is at Baker's Island loading." And we think that no violence is done to the language used, to give it the sense which all the circumstances of the case indicate that it must have had in the minds of the parties.

If we are right in this construction of the contract, there can be no uncertainty as to its effect upon the liability of the underwriters. The loss clearly accrued at a time when, by the terms of the policy, the risk was suspended. The ship sailed in ballast from Honolulu on or about the 7th of November, 1867, and arrived at Baker's Island on the afternoon of the twentieth day of November, 1867. She came to her mooring in safety, and her sails were furled, shortly after which a heavy gale and heavy surf arose. The gale and surf continued with violence until the 3d of December, 1867, when the ship parted her moorings, and was totally wrecked and lost. At no time after her arrival at Baker's Island was it possible to discharge ballast or receive cargo or to commence the progress of loading. The violence of the winds, current, and waves, and their adverse course and direction, prevented the ship from slipping her cables and getting to sea, or otherwise escaping the perils that surrounded her.

These facts are indisputable; and they show that, when the loss occurred, the vessel was at Baker's Island for the purpose of loading. That the process of loading had not actually commenced is of no consequence. The suspension of the risk commenced as soon as the vessel arrived at the island and was safely moored in her proper station for loading.

The appellee, as a further defence, set up laches in bringing suit. The libel was not filed until more than four years had

elapsed after the cause of action had accrued. The Statute of Limitations of Maryland requires actions of account, assumpsit, on the case, &c., to be brought within three years; and the counsel for the appellee insists that by analogy to this statute the Admiralty Court, having concurrent jurisdiction with the State courts in this case, should apply the same rule. We had occasion, in the case of *The Key City*, 14 Wall. 653, to explain the principles by which courts of admiralty are governed when laches in bringing suit is urged as an exception in cases cognizable therein. In view of the construction which we have given to the contract in this case, it is not necessary to pass upon the precise question now raised by the appellee.

. It is also unnecessary to examine other questions which were mooted on the argument.    *Decree affirmed.*