S. Keith TUTHILL et al., Appellants,

v.

SOUTHWESTERN PUBLIC SERVICE COMPANY and Tuco, Inc., Appellees.

No. 9200.

Court of Civil Appeals of Texas, Amarillo.

March 27, 1981.

Rehearing Denied April 22, 1981.

Hudson, Keltner, Smith, Cunningham & Payne, Joe Burce Cunningham, Fort Worth, for appellants.

Culton, Morgan, Britain & White, D. Pat Long, Amarillo, for appellees.

DODSON, Justice.

This case involves the construction and interpretation of a price escalation clause in an intrastate gas purchase contract. The appellants are S. Keith Tuthill, Bill J. Barber, Hugh L. Umphres, Jr., M. K. Woodward, Donald L. Bagwell, Robert C. Buckmiller, Robert Lee Cotton, Trustee of the Randall Lee Cotton Trust, the Robert Gregory Cotton Trust, and the Pamela Ann Cotton Trust, Edwin H. Flood, William P. Hale, Sharon Kelley Oeschger, Judy Kelley Morgan, Oliver Kendall Kelley, and The Kelley Company, a Partnership. The appellees are Southwestern Public Service Company and Tuco, Inc.

After a bench trial, the court rendered judgment for the appellants in the amount of $18,964.41 plus prejudgment interest in the amount of $3,897.41 and attorney's fees in the amount of $20,000. Appealing from the judgment, the appellants claim, for various reasons, that the court should have rendered judgment for them in an additional amount of $521,916.14 plus additional attorney's fees. By cross-points the appellees challenge the court's award of attorney's fees and prejudgment interest. We affirm.

In May of 1971 the appellants drilled and successfully completed a gas well known as the Thompson et al. No. 1 Well located in Moore County, Texas. By a contract dated 9 November 1971 the appellants agreed to sell and Southwestern Public Service Company agreed to purchase all of the natural gas produced from the well for a term of twenty years. Southwestern Public Service Company agreed that the gas would not be sold in interstate commerce. Subsequently, Southwestern Public Service Company assigned the contract to its subsidiary, Tuco, Inc.

The contract, among other things, provides for a purchase price of 22 cents per thousand cubic feet (MCF) for the first five years of the agreement plus escalations of 1 cent per MCF for each successive five-year period of the agreement with certain adjustments for the heating nature of the gas. Although the contract provides that the gas will not be sold in interstate commerce, the agreement further contains an additional price escalation clause which reads as follows:

> If any applicable just and reasonable area ceiling rate or settlement rate is established by the Federal Power Commission for the pricing area which includes the acreage covered by this agreement, and such rate is higher than the price herein provided for, then the price to be paid by Buyer or Seller for the gas delivered hereunder shall be increased, effective as of the date such just and reasonable ceiling rate or settlement rate is prescribed or permitted, to equal such higher rate.

Subsequent to the date of the contract the Federal Power Commission issued several opinions establishing rates for the pricing area which includes the acreage covered by the agreement and nationwide rates.

By pleadings in the trial court the appellants claim that the price escalation clause

in question is triggered by FPC Opinions 699–H, 742 et seq., 749 and 770–A, and that the price to be paid for the gas sold under the contract should be increased to the amounts authorized by such opinions. In their pleadings, the appellants sought (1) an adjudication of the meaning of the price escalation clause, (2) an accounting of the gas already purchased under the agreement, (3) judgment for the additional amount alleged due on gas already purchased, (4) prejudgment interest, and (5) attorney's fees.

By their live trial pleadings, the appellees maintained that the price escalation clause was not triggered by FPC Opinion Nos. 699–H and 770–A. Answering further the appellees plead the defense of accord and satisfaction to all alleged amounts due under the various rate opinions and maintained that the appellants were not entitled to recover any prejudgment interest or attorney's fees.

The parties, among other things, stipulated as follows:

> Although Defendants [appellees] now admit that the price for gas to be paid to Plaintiffs [appellants] under the contract in question should be the prices stated in Opinion Nos. 742, etc. and 749 of the Federal Power Commission from August 28, 1975, Defendants [appellees] did not begin paying such prices until November, 1977. In November, 1977 Defendants [appellees] paid to Plaintiffs [appellants] the total sum of $31,880.82 as stated in the schedule attached herein entitled "Tuthill-Barbee Thompson et al #1" in payment of the past due amounts.

In this connection, the parties agreed that the November 1977 payment was made and accepted without prejudice to their respective claims or defenses. The stipulation further shows that as of 31 May 1978, the sum of $18,964.41 remained unpaid under FPC Opinion Nos. 742 et seq. and 749.

The trial court made findings of fact and conclusions of law and determined, *inter alia*, that the escalation clause in question was not ambiguous, that such clause was not triggered by FPC Opinion Nos. 699–H

and 770–A, that such clause was triggered by FPC Opinion Nos. 742 et seq. and 749, and that the appellees failed to establish their defense of accord and satisfaction. Accordingly, the court rendered judgment that the appellants recover from the appellees the amount of $18,964.41 plus prejudgment interest on such sum in the amount of $3,897.41 and attorney's fees in the amount of $20,000.

The appellants bring fourteen points of error. In their third point they maintain that the trial court erred in failing to hold that the price escalation clause was triggered by FPC Opinion No. 699–H, and by their fourth point they claim the trial court erred in failing to hold that the price escalation clause was triggered by FPC Opinion No. 770–A. In connection with each point, the appellants affirmatively assert that, for the gas purchased under the contract, they are entitled to be paid the price authorized by each of such opinions. We do not agree.

FPC Opinion No. 699–H established "Just and Reasonable National Rates for Sales of Natural Gas From Wells Commenced On or After January 1, 1973, And New Dedications of Natural Gas to Interstate Commerce On or After January 1, 1973." FPC Opinion No. 770–A established just and reasonable "National Rates for Jurisdictional Sales of Natural Gas Dedicated to Interstate Commerce On or After January 1, 1973, for the Period from January 1, 1975, to December 31, 1976." The undisputed evidence is that the well in question was commenced and completed on or before January 1, 1973. The natural gas from the well was not and could not be dedicated to interstate commerce on or after January 1, 1973, because the contract specifically provides that such gas would not be sold in interstate commerce during the term of the agreement.

Nevertheless, the appellants contend that, under the contract, a price increase is authorized if the FPC sets any price for gas sold in the area in which the well is located which is higher than the fixed price set out in the agreement, and that consistent with such interpretation, the price escalation

clause was triggered by Opinions 699–H and 770–A. In essence, the appellants maintain that they are entitled to the highest just and reasonable ceiling rate applicable to the area in which the well is located notwithstanding any vintage and dedication requirements as prescribed in the FPC orders in question.

The appellants' supporting argument focuses on the meaning of the phrase "any applicable just and reasonable area ceiling rate or settlement rate." For clarity, we restate the escalation clause, which provides as follows:

> If any *applicable* just and reasonable area ceiling rate or settlement rate is established by the Federal Power Commission for the pricing area which includes the acreage covered by this agreement, and such rate is higher than the price herein provided for, then the price to be paid by Buyer to Seller for the gas delivered hereunder shall be increased, effective as of the date such just and reasonable ceiling rate or settlement rate is prescribed or permitted, to equal such higher rate. (Emphasis added).

The appellants say the adjective "applicable" refers to and modifies the phrase "pricing area which includes the acreage covered by this agreement." Thus, they would rearrange the wording of the escalation clause to read, as follows:

> If any just and reasonable area ceiling rate or settlement rate is established by Federal Power Commission for the *applicable* price area which includes the acreage covered by this agreement, and such rate is higher than the price herein provided for, then the price hereunder shall be increased, effective as of the date such just and reasonable ceiling rate or settlement rate is prescribed or permitted, to equal such higher rate.

Conversely, the appellees maintain that, as used in the sentence, the word "applicable" is an adjective modifying the phrase "just and reasonable area ceiling rate or settlement rate." In their trial pleadings, the appellees summarize their position as follows:

That under the terms of this provision, the parties unambiguously agreed that Plaintiffs, the sellers of the gas, would be entitled to the prices established by the Federal Power Commission for gas of the same "vintage". In other words, although the gas in question is not sold in interstate commerce and is not subject to the jurisdiction of the Federal Power Commission, nevertheless, under this provision the Plaintiffs would be entitled to the applicable Federal Power Commission rate as if the gas were so sold in the interstate market.

Both the appellants and appellees contend that the contract is unambiguous, that the court should construe the contract in light of the circumstances surrounding its execution, and that such surrounding circumstances support their respective interpretations of the agreement.

In general, when construing contracts, the court has a duty to ascertain and effectuate the actual objective intent of the parties. *See generally Spence & Howe Construction Co. v. Gulf Oil Corp.*, 365 S.W.2d 631, 637 (Tex.1963); *Cutrer v. Cutrer*, 162 Tex. 166, 345 S.W.2d 513, 519 (1961). In ascertaining such intent, the court may look to the surrounding circumstances when the contract was entered into, the situation of the parties, and the subject-matter of the instrument, even though the language used in the contract is ambiguous. *Ryan v. Kent*, 36 S.W.2d 1007, 1010 (Tex.Comm'n App. 1931, judgment adopted).

As stated in *Ryan* at 1010:

A clear statement of this rule is that made in *Reed v. Insurance Co.*, 95 U.S. 23, 30, 24 L.Ed. 348, wherein the court said: "Although a written agreement cannot be varied (by addition or subtraction) by proof of circumstances out of which it grew and which surrounded its adoption, yet such circumstances are constantly resorted to for the purpose of ascertaining the subject-matter and the stand-point of the parties in relation thereto. Without some knowledge derived from such evidence, it would be impossible to comprehend the meaning of

an instrument, or the effect to be given to the words of which it is composed. This preliminary knowledge is as indispensable as that of the language in which the instrument is written. A reference to the actual condition of things at the time, as they appeared to the parties themselves, is often necessary to prevent the court, in construing their language, from falling into mistakes and even absurdities. * * * 'It may, and indeed it often does, happen, that, in consequence of the surrounding circumstances being proved in evidence, the courts give to the instrument, thus relatively considered an interpretation very different from what it would have received, had it been considered in the abstract. But this is only just and proper; since the effect of the evidence is not to vary the language employed, but merely to explain the sense in which the writer understood it.' "

Furthermore, in *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 519 (Tex.1968), the Court stated as follows:

Where a question relating to the construction of a contract is presented, as here, we are to take the *wording* of the instrument, *consider the same in the light of the surrounding circumstances,* and apply the pertinent rules of construction thereto and thus settle the meaning of the contract (emphasis theirs).

The evidence and reasonable inferences therefrom show that, when the well in question was drilled and completed in 1971, the appellants had at least three alternatives concerning the disposition of the gas. They could sell the gas in interstate commerce, in intrastate commerce or simply not sell it. The price for the sale of gas in interstate commerce was fixed by the FPC. The price for the sale of gas in intrastate commerce was fluctuating and possibly bringing a higher price than the interstate market.

Naturally, the appellants desired to obtain the highest and best available price for the gas. On the other hand, the appellees wanted to obtain a long-term and reliable

source of gas for use in their operations. After terminating negotiations with a prospective interstate purchaser, the appellants made and entered into the contract in question with the appellees.

By the fixed base price set forth in the contract, the appellants obtained the negotiated intrastate price for their gas. As stated above, the parties agreed that the gas would not be sold in interstate commerce and thereby prohibited the gas from being subjected to the jurisdictional control of the FPC. By the escalation clause in question they obtained the "applicable just and reasonable area ceiling rate or settlement rate" established by the FPC for the pricing area in which the well was located without subjecting the gas to the jurisdiction and control of the FPC. Thus, in effect, they received a favorable combination of the intrastate and interstate prices.

■ Accordingly, when we view the entire contract and the language used therein in light of the pertinent surrounding circumstances, we must conclude, that for the singular purpose of effectuating the price escalation clause, the parties objectively intended to treat the gas as though such gas was sold in interstate commerce at the time they made and entered into the contract. Otherwise the escalation clause, as written, is nugatory because the contract specifically prohibits the appellees from selling the gas in interstate commerce during the twenty-year term of the agreement and thereby subjecting the gas to FPC jurisdictional control. Applying this construction to the contract, the price escalation clause was not triggered by FPC Opinion Nos. 699–H and 770–A, because the gas failed to meet the requirements under those opinions. Accordingly, the appellants' second and fourth points are overruled.

By their sixth point of error, the appellants alternatively contend that the price escalation clause is ambiguous unless their construction of the clause is adopted by the court. In this connection, the appellees maintain that their construction of the clause is correct and that such clause is not ambiguous.

The ambiguity issue is a question of law for the court. *Nixon v. First State Bank of Corpus Christi*, 540 S.W.2d 817 (Tex.Civ. App.—Corpus Christi 1976), *writ ref'd n.r.e.*, 544 S.W.2d 378 (Tex.1976) (per curiam). The test of ambiguity is stated in *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951), as follows:

In a fairly recent case this court said that "if a written contract is so worded that it can be given a certain definite or legal meaning or interpretation, it is not ambiguous." *Lewis v. East Texas Finance Co.*, 136 Tex. 149, 146 S.W.2d 977, 980. To the same effect, see *Remington Rand, Inc. v. Sugarland Industries*, 137 Tex. 409, 153 S.W.2d 477, 483 and *Rachford v. Stewart Title Guaranty Co.*, Tex. Civ.App., 160 S.W.2d 985, 987 writ ref. w.o.m. The converse of this is *that a contract is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning.* (Emphasis added).

Furthermore, a contract is not rendered ambiguous because the opposing parties each reach a different conclusion by their respective interpretations of the language used in the agreement. *Phillips Petroleum Company v. Harnly*, 348 S.W.2d 856, 859 (Tex.Civ.App.—Amarillo 1961, writ. ref'd n.r.e.).

■ In the interpretation of contracts, whether they be ambiguous in the legal sense or simply contain language of doubtful meaning, the primary objective of the court is to ascertain and give effect to the true intention of the parties. *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d at 158. To achieve this objective the court will examine and consider the entire agreement in the light of the surrounding circumstances and seek as best it can to harmonize and give effect to all of the provisions of the contract so that none of such provisions will be rendered meaningless. *See Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d at 158; and *Ryan v. Kent*, 36 S.W.2d at 1010. *See also City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d

at 518–19. Applying the above-stated principles to the contract before us, we must conclude that the escalation clause in question has a definite legal meaning and that such clause is not ambiguous. Accordingly, we overrule appellants' sixth point of error.

The appellees bring seven cross-points of error. By their second cross-point, they contend the trial court erroneously awarded the appellants judgment for attorney's fees in the amount of $20,000. Under this cross-point, the appellees make several attacks on the attorney's fee award.

First, the appellees say the appellants are not entitled to attorney's fees because such fees were not authorized by Tex.Rev.Civ. Stat.Ann. art. 2226 (Vernon Supp. 1980–1981), at the time the suit was filed. The appellants filed this action on 18 January 1977. In their original petition, they did not seek attorney's fees. Effective 6 June 1979, article 2226 was amended to permit the recovery of attorney's fees for suits founded on oral or written contracts. Section 2 of the amendatory act provides as follows: "This Act is remedial in character and is *intended to apply to all pending and future actions, regardless of institution thereof or of the accrual of any cause of action asserted.*" (Footnote omitted) (emphasis added). 1979 Tex.Gen. Laws, ch. 314, section 2, at 718.

■ The Legislature clearly intended that the amendment would apply to "pending" actions. An action is pending in the trial court until all issues have been determined by the court, a final judgment has been rendered, and all post-trial motions have been disposed of. *See Nevitt v. Wilson*, 116 Tex. 29, 285 S.W. 1079, 1083 (1926); *Southern Underwriters v. Hodges*, 141 S.W.2d 707, 712 (Tex.Civ.App.—Waco 1940, writ ref'd); *Prescott-Phoenix Oil Co. v. Gilliland Oil Co.*, 241 S.W. 775, 777 (Tex.Civ. App.—Amarillo 1922, no writ). By their second original petition filed on 7 December 1977, the appellants sought attorney's fees under article 2226. This action was tried before the court on the 13th and 14th days of July, 1978. The trial court rendered

judgment in this action on 19 November 1979. Thus, the action was clearly "pending" in the trial court when the amendment to article 2226 became effective on 6 June 1979. Accordingly, we overrule this contention.

Next, the appellees maintain that the appellants are not entitled to attorney's fees because they made an excessive demand. Furthermore, by their fifth cross-point, they claim that the trial court erred in awarding the appellants prejudgment interest in the amount of $3,897.41 on the $18,964.41 recovery because of such excessive demand. The crux of this challenge is that, because the appellants initially demanded price increases under FPC Opinions 699–H and 770–A in their original petition, and because the trial court determined that they were not entitled to such price increases, the appellants made an excessive demand upon the appellees.

By stipulations the parties agreed that the amount in controversy by the claims under FPC Opinions 699–H and 770–A was the sum of $521,916.14. In their first amended original petition, the appellants made their claim under FPC Opinion Nos. 742 et seq. and 749. The appellants recovered under this claim and were awarded the challenged prejudgment interest and attorney's fees on such recovery.

■ In general, when a creditor makes an excessive demand on a debtor, that creditor will not be allowed attorney's fees for prosecuting his excessive claim. *Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex.1981). *See Collingsworth v. King*, 155 Tex. 93, 283 S.W.2d 30 (1955); *Ingham v. Harrison*, 148 Tex. 380, 224 S.W.2d 1019, 1022 (1949); *Warrior Constructors v. Small Business Inv. Co. of Houston*, 536 S.W.2d 382, 386 (Tex. Civ.App.—Houston [14th Dist.] 1976, no writ). However, we discern from these cases that a demand is not "excessive" unless: (1) the creditor wrongfully demands an amount in excess of that which he is due; and (2) the creditor either refuses, or clearly indicates that he will refuse, tender of the amount actually due.

■ In their live trial pleadings, the appellees did not affirmatively assert excessive demand as a defense to the claim for attorney's fees and prejudgment interest. Furthermore, the appellees failed to request and obtain findings of facts on the essential elements of excessive demand. Moreover, the probative evidence fails to show that the appellants wrongfully demanded an amount in excess of that which was due on the claim under FPC Opinion Nos. 742 et seq. and 749, and that the appellants either refused, or clearly indicated that they would refuse, tender of the amount actually due under such opinions. Additionally, we are not persuaded that a demand made on one claim has the cumulative effect of rendering excessive a demand on another claim in the same action. Thus, we conclude that the demand under FPC Opinion Nos. 699–H and 770–A does not preclude the award of attorney's fees and prejudgment interest on the recovery under FPC Opinions 742 et seq. and 749. Accordingly, under these circumstances, we overrule the appellees' excessive demand challenge to the trial court's award of attorney's fees and prejudgment interest.

■ The appellees further maintain that the award of attorney's fees in the amount of $20,000.00 is grossly excessive. In determining the reasonableness of attorney's fees the following factors should be considered:

1. The nature of the case; its difficulties, complexities and importance and the nature of the services required to be rendered by counsel; *Gulf Paving Co. v. Lofstedt*, 144 Tex. 17, 188 S.W.2d 155, 160 (1945); *McFadden v. Bresler Malls, Inc.*, 525 S.W.2d 258 (Tex.Civ.App.—Austin 1975), *modified*, 548 S.W.2d 789 (Tex.Civ.App.—Austin 1977, no writ).

2. The amount of money involved, the client's interest at stake, and the amount of time devoted by the attorney in the benefit derived by the client; *Vaughn v. Gunter*, 458 S.W.2d 523, 528 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.); *McFadden v. Bres-*

*ler Malls, Inc.,* 526 S.W.2d 258, 263 (Tex.Civ.App.—Austin 1975), *modified* 548 S.W.2d 789 (Tex.Civ.App.—Austin 1977, no writ).

3. The time necessarily spent by the attorney, the responsibility imposed upon counsel, and the skill and experience reasonably needed to perform the services; *Weatherly v. Longoria,* 292 S.W.2d 139, 141 (Tex.Civ.App.—San Antonio 1956, writ ref'd n. r. e.); *McFadden v. Bresler Malls, Inc.,* 526 S.W.2d 258, 264 (Tex.Civ.App.—Austin 1975), *modified* 548 S.W.2d 789 (Tex.Civ.App.—Austin 1977, no writ).

4. An appellate court has the authority in looking at the entire record to draw on the common knowledge of the justices of the court and their experience as lawyers and judges and to view the matter in the light of the testimony, the record and the amount in controversy. *Southland Life Ins. Co. v. Norton,* 5 S.W.2d 767, 769 (Tex. Com.App. 1928, holding approved), *remittitur ordered* 9 S.W.2d 752, 753 (Tex.Civ.App.—Galveston 1928, no writ).

*Knopf v. Standard Fixture Co., Inc.,* 581 S.W.2d 504, 507 (Tex.Civ.App.—Dallas 1979, no writ).

In this instance, the action is complex and involves specialized areas of the law. In their first amended original petition filed on 10 October 1977, the appellants amended their action to include the claim for price increases under FPC Opinion Nos. 742 et seq. and 749. In the stipulations by the parties, the appellees admitted that the price for gas to be paid to the appellants from 28 August 1975 was the price stated in such FPC opinions. After the first amended petition was filed, the first payments for gas under such opinions were made in November of 1977. There is no evidence in the record showing that the appellees tendered any payments to the appellants under such opinions from 28 August 1975 until November of 1977.

■ Accordingly, as a result of appellants' action under FPC Opinion Nos. 742 et seq. and 749, they were paid $31,880.82, and recovered the additional amount of $18,-964.41 plus prejudgment interest in the amount of $3,897.41 for a total of $54,-742.64. Moreover, under FPC Opinion Nos. 742 et seq. and 749, the price for gas sold under the contract increased approximately $1,500 per month. As of 28 August 1975, approximately 401 months remained on the contract; and, as a consequence of the action, the appellants received a substantial benefit for the remaining term of the contract. Thus, applying the above-stated standards to the circumstances before us, we must conclude that the $20,000 award of attorney's fees is not grossly excessive.

Lastly, the appellees contend the evidence is legally and factually insufficient to support the trial court's finding that $20,000 is a reasonable attorney's fee. We disagree.

The crux of appellees' contention is that the finding is based on hearsay testimony given by one of appellants' attorneys. In this action, the appellants are represented by Hudson, Keltner, Smith, Cunningham & Payne, attorneys-at-law of Fort Worth, Texas. The record in this court reflects that Mr. Cunningham and Mr. Plattsmer of the firm each filed pleadings, participated in the taking of depositions, appeared at the trial, and took various other action as attorneys for the appellants.

At the trial, Mr. Cunningham testified that he had approximately twenty-five years of experience as a practicing lawyer and that Mr. Plattsmer had approximately eight years of experience, that he had spent 140 hours of time on the case, that, from the law firm's business records, Mr. Plattsmer spent 195 hours on the case, and that associates in the firm had spent 14 hours on the case for a total of 349 hours. This testimony was received without objection by the appellees. On cross examination, Mr. Cunningham stated that he had no personal knowledge of the exact amount of time Mr. Plattsmer spent on the case, and that he was testifying from the firm's business records in that regard.

An Amarillo attorney gave his opinion that $20,000 was a reasonable attorney's fee for the action under FPC Opinion Nos. 742 et seq. and 749. The attorney stated that he had reviewed the case file in the District Clerk's office and that the action was complex. On cross examination, the attorney related further that he calculated the fee by assigning $17,500 to the hours spent on the case by appellants' attorneys and added a $20,000 accomplishment fee. Thus, the appellees say that the only evidence in the record in support of $20,000 attorney's fees is based on the hearsay testimony of Mr. Cunningham regarding the time spent by Mr. Plattsmer.

Assuming arguendo that the opinion of the Amarillo attorney is based in part upon the alleged hearsay testimony, the trial court is not bound by such opinion and may consider other pertinent matters and evidence in determining the amount of reasonable attorney's fees to award on a claim under article 2226, as amended effective 6 June 1979. Furthermore, as stated above, the amount of time spent by the attorneys in preparation and trial of the action is only one of the factors for the trial court to consider in determining a reasonable attorney's fee in a trial before a court upon a claim under article 2226, as amended effective 6 June 1979.

Article 2226, as amended effective 6 June 1979, provides, among others, as follows:

Any person, corporation, partnership, or other legal entity having a valid claim against a person or corporation ... or suits founded on oral or written contracts, may present the same to such persons or corporation or to any duly authorized agent thereof; and if, at the expiration of 30 days thereafter, payment for the just amount owing has not been tendered, the claimant may, if represented by an attorney, also recover, *in addition to his claim and costs, a reasonable amount as attorney's fees.* The usual and customary fees in such cases shall be presumed to be reasonable, but such presumption may be rebutted by competent evidence. *In a proceeding before the*

*court ... the court may in its discretion take judicial knowledge of the usual and customary fees in such matters and of the contents of the case file without receiving further evidence.* (Emphasis added).

In determining whether the evidence is legally sufficient to support the trial court's finding of $20,000 as a reasonable attorney's fee, we must consider the evidence and all reasonable inferences therefrom in the light most favorable to the finding and disregard any evidence contrary thereto. *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951) (per curiam); *Gray v. Baker & Taylor Drilling Co.,* 602 S.W.2d 64, 65 (Tex.Civ.App.—Amarillo 1980, writ ref'd n. r. e.). From our review of the record, the evidence and reasonable inferences therefrom show that the action on which the appellants recovered is difficult, complex and required skilled and experienced attorneys who are knowledgeable in specialized areas of the law.

The evidence further shows that there was a substantial amount of money involved in the claim under Opinions 742 et seq. and 749; that the attorneys' efforts on behalf of the appellants resulted in a substantial benefit; and that, although the claim on which the appellants recovered was closely related to the claim on which they did not recover, the appellants' attorneys necessarily expended a considerable amount of time preparing and presenting the claim and preparing and trying its contested portion. Thus, under the circumstances, we must conclude that the probative evidence and reasonable inferences therefrom support the trial court's finding of attorney's fees in the amount of $20,000. Accordingly, we overrule the legal insufficiency challenge.

In deciding the factual insufficiency challenge we must consider all of the evidence in support of and contrary to the challenged finding to determine if such finding is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In this connection, we deem it unnecessary to further reiterate the evidence heretofore stated.

Applying the appropriate legal standard, we overrule the appellees' factual insufficiency challenge.

In summary, we overrule the appellants' third, fourth and sixth points of error, and the appellees' second and fifth cross-points. Our disposition of these points of error and cross-points is dispositive of this appeal. Accordingly, we affirm the judgment of the trial court.