**AMOCO PRODUCTION COMPANY,**
**Appellant,**

v.

**DELHI GAS PIPELINE CORPORA-**
**TION and Oklahoma Natural Gas**
**Company, Appellees.**

**No. 05–83–00655–CV.**

Court of Appeals of Texas,
Dallas.

June 28, 1984.

Rehearing Denied July 25, 1984.

S. Tom Morris, Gibson, Ochsner & Adkins, Amarillo, for appellant.

W.S. Barron, Jr., Brice & Barron, Leo J. Hoffman, Strasburger & Price, Dallas, for appellees.

Before CARVER, SPARLING and ROWE, JJ.

CARVER, Justice.

Amoco Production Company appeals the trial court's denial of its claim against Delhi Gas Pipeline Corporation based upon a price escalation provision in their gas purchase agreement relating to sixteen gas wells of Amoco in Oklahoma whose production is sold, intrastate, to Delhi under the agreement. We affirm.

The court desires at the outset to gratefully remark upon the high level of professional presentation we have enjoyed in this cause, both in the record made in the trial court and in the briefs and oral arguments presented here.

The facts are not in dispute. Officers of experience and authority for both Amoco and Delhi negotiated and concluded a gas purchase agreement on the earliest completed of the sixteen wells and, as subsequent wells were completed, executed identical additional contracts. Common to each of the contracts was an escalation clause providing:

If the Federal Power Commission or any successor governmental authority having jurisdiction in the premises shall at any time hereafter prescribe by order following hearing, or by settlement, a just and reasonable area ceiling rate for gas-well gas, purchased under contracts entered into on or before the date hereof, which is higher than the rate herein provided to be paid, then the rate to be paid by Buyer to Seller for gas-well gas purchased and sold under the provisions of this Agreement shall be increased to equal such higher rate including any adjustments for quality of the gas, such increase to be effective on the date set forth in the Federal Power Commission order finally approving said increased area ceiling rate; provided, however, that if said order so increasing the area ceiling rate is subject to administrative review or to judicial review by a court of competent jurisdiction, Buyer shall not pay said increased area ceiling rate until it has been furnished a bond or other satisfactory indemnification by Seller assuring refund with interest to Buyer should the administrative review or the judicial review result in a reduction in or return to the previous area ceiling rate, in which event the price payable hereunder shall be the price set forth in Section 5.1 above or the increased area ceiling rate so determined, whichever is higher.

During the period when the first seven of the gas purchase contracts were made, the Federal Power Commission orders fixing area ceiling prices for natural gas sold in interstate commerce categorized prices according to the date, or age, of gas purchase contracts, or "contract vintaging," as well as the chemical characteristics of the gas itself. During the period when the last four of the gas purchase contracts were made, the Federal Power Commission issued opinions No. 699H and No. 770A which fixed *national* (as distinguished from *area*) ceiling prices for natural gas sold in interstate commerce and categorized prices according to the date and age of the *gas well* (as distinguished from the date, or age, of the *gas purchase contract*). Both orders continued unchanged the factor of the chemical composition of the gas. It is seen then that opinions No. 699H and No. 770A substituted: (1) *national* ceilings rather than *area* ceilings; and (2) *well vintaging* rather than *contract vintaging*. On December 1, 1978, after all contracts had been executed, the Natural Gas Policy Act of 1978, 15 U.S.C.A. Sec. 3301 et seq., became effective and superseded prior orders of the Federal Power Commission. The Act categorized prices on the date, or age, of completion of each gas well, or "well vintaging," as well as the chemical characteristics of the gas itself. All of the gas purchased by Delhi from Amoco is, and has been, resold to Oklahoma Natural Gas Co. for retail distribution. Oklahoma intervened in this suit, adopted the position of Delhi, but neither sought nor was granted any relief by judgment.

At trial before the court, Amoco contended (1) that the escalation clause was unambiguous; (2) that Federal Power Commission opinions No. 699H and No. 770A each triggered the contract escalation clauses; (3) that subsequently Congress and the President, in passing into law the National Gas Policy Act (NGPA), was a "successor governmental authority" to the Federal Power Commission; which after "hearing" had "prescribed by order" (the statute) a just and reasonable national ceiling rate for gas well gas "purchased under contracts entered into on or before the date hereof" [each of the eleven contracts between Amo-

co and Delhi]; "which is higher than the rate herein provided"; consequently, NGPA also triggered the escalation clauses; therefore, Amoco was entitled to the benefits of the escalation clause under all three theories. The arithmetic amounts of escalation were not in dispute, nor was the interest due for late payment, nor was the reasonable attorney's fee, in the event Amoco was shown to be correct.

Delhi contended (1) that the escalation clause was unambiguous; (2) that the escalation clause, evidenced by its terms and the extrinsic admissible evidence, showed a common intention of the parties to place, and keep, the *price* of gas from each of Amoco's sixteen wells in parity with the *price* Amoco would, under current and successive orders of the Federal Power Commission or even a congressional act, have realized had gas from that well been sold in interstate commerce; and (3) each of Amoco's sixteen wells fails to qualify for escalation because the same well, if its gas were presently being sold in interstate commerce, would fail to qualify for the ceiling price fixed by the successive opinions of the Federal Power Commission or by the Natural Gas Policy Act.

The trial court's amended findings include:

9. Throughout the period during which FPC Opinion No. 699–H was in effect, Delhi paid to Amoco the 699–H ceiling price for all gas sold from each well which would have qualified for that price if sold in interstate commerce.

10. Throughout the period during which the FPC Opinion No. 770–A was in effect, Delhi paid to Amoco the applicable 770–A ceiling price for all gas sold from each well which would have qualified for that price if sold in interstate commerce.

11. For all gas sold by Amoco to Delhi since the effective date of the NGPA, Delhi has paid Amoco the applicable Section 104 price, including monthly price increases in accordance with the annual inflation adjustment factor, for which such gas would have qualified if sold in interstate commerce.

12. A dispute exists between Amoco and Delhi as to whether vintaging is to be taken into account in applying the FPC national ceiling prices and the NGPA prices to sale under the Gas Purchase Agreements; Delhi contends that vintaging is to be taken into account and made the payments described in Findings of Fact Nos. 9, 20 and 11 on that basis.

13. In including the price escalation clause in the Gas Purchase Agreements, it was the intention of the parties to incorporate a vintaging concept with future price increases based on a multi-tiered pricing structure and not on a single price basis.

14. The price escalation clause in the Gas Purchase Agreements was composed and prepared by authorized personnel of Amoco.

The trial court's conclusions of law include:

1. The price escalation clause of the Gas Purchase Agreement is not ambiguous.

2. The intention of Amoco and Delhi, as reflected in the unambiguous language of the price escalation clause, is that in implementing such clause with reference to the FPC Opinions Nos. 699–H and 770–A, and with reference to the pricing provisions of the NGPA, the vintage of the gas sold by Amoco to Delhi is to be taken into account so that Amoco would receive a price as high as the price that Amoco could have received for the same gas if it had sold the gas in interstate commerce at the times the subject Gas Purchase Agreements were entered into.

3. The FPC Opinion No. 699–H price triggered the price escalation clause of the Gas Purchase Agreements only with respect to gas meeting the vintage restrictions set forth in that Opinion for such price.

4. The FPC Opinion No. 770–A prices triggered the price escalation clause of the Gas Purchase Agreement only with respect to gas meeting the applicable vintage restrictions set forth in that Opinion for such prices.

5. The NGPA price category which corresponds to the price escalation clause triggering mechanism provided for the Gas Purchase Agreements is the Section 104 category, and Amoco is entitled to Section 104 prices with respect to production from its wells, in accordance with the applicable vintage requirements under Section 104.

6. Alternatively, if the price escalation were ambiguous with respect to the operation of such clause with reference to FPC and NGPA vintage prices, any such ambiguity must be resolved adversely to Amoco, which drafted the price escalation clause, and in favor of the interpretation set forth in Conclusion of Law No. 2, such resolution of any such ambiguity being further compelled by the parties' course of performance.

On appeal, Amoco first urges that the trial court erred in adopting the construction of the unambiguous escalation clause which finds that the common intent of the parties was to adopt "vintaging" (whether "contract" or "well date") as a part of the conditions for escalation. Amoco argues that the only "trigger" for its right to escalation lies in the phrase "purchased under contracts entered into on or before the date hereof," i.e. "contract vintaging." We are unable to agree that the parties' intent is only evidenced by this phrase but, to the contrary, hold that the parties' intent must be gathered from the whole of the escalation agreement. *Pacific Mutual Life Ins. Co. v. Westglen Park, Inc.,* 160 Tex. 1, 325 S.W.2d 113 (1959). In addition to the "four corners" of the parties' agreement, the intent of the parties may be evidenced by the facts and circumstances before the parties themselves at the time they entered into the "four corners" of the agreement. *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 731 (Tex.1981); *Ryan v. Kent,* 36 S.W.2d 1007, 1010 (Tex.Com'n App.1931, jdgmt. adopted); *Tuthill v. Southwestern Public Service Co.,* 614 S.W.2d 205 (Tex. Civ.App.—Amarillo 1981, writ ref'd n.r.e.). In *Tuthill,* the court construed an unambiguous escalation clause, not unlike the escalation clause before us, in these words:

Accordingly, when we view the entire contract and the language used therein in the light of the pertinent surrounding circumstances, we must conclude, that for the singular purpose of effectuating the price escalation clause, the parties objectively intended to treat the gas as though such gas was sold in interstate commerce at the time they made and entered into the contract.... Applying this construction to the contract, the price escalation clause was not triggered by FPC Opinion Nos. 699–H and 770–A, because the gas failed to meet the requirements under those opinions.

614 S.W.2d at 210. The testimony in our case as to the "pertinent surrounding circumstances" is comparable to the evidence in *Tuthill,* i.e. the parties desired to buy, and sell, the gas in intrastate commerce but to price the gas as if it was sold in interstate commerce. We adopt the reasoning of *Tuthill* and hold that the escalation clause, by its chosen language, when considered in the light of the parties' circumstances at the time of contracting, evidenced a common intent that Amoco would accept and Delhi would pay for the gas produced by each of the sixteen wells the higher of the contract price or the price each well would qualify for if the gas was then, or thereafter, being sold in interstate commerce. Differently stated, if a well would not then, or thereafter, if its gas were sold in interstate commerce, qualify for a higher price under the then lawful authority, or a successor lawful authority, the escalation clause would not be triggered.

Our holding is not inconsistent with the interpretation which seems to have been given to the escalation clause by the parties. The last four of the eleven contracts involved were *not* changed by the parties despite the current changes made by the authorities regulating the price of interstate gas. Had Amoco (or Delhi) desired an escalation clause exclusively tied to "contract vintaging" even after "contract vintaging" ceased to be employed by the FPC; or had Amoco (or Delhi) desired to

remove vintaging of any kind as a factor despite its use by FPC or the NGPA; or had Amoco (or Delhi) desired to include, or exclude, any other factor in triggering the escalation clause, they had four contracts in which such changes could have been made. We do not construe the escalation "for" or "against" either party but point out that, if their intent was not satisfactorily expressed by the escalation clause, as written and in the light of the successive rulings as to pricing of interstate gas, they had the opportunity to change it. If, as we have held, the parties intended the escalation clause to merely make each intrastate well get the current, or future, interstate price, as such well might qualify for under present or future regulations, no change in the escalation clause language was needed.

Nor is our holding inconsistent with Amoco's own construction of the escalation clause in a different particular. The specific language of the escalation clause bespeaks "[i]f ... authority ... prescribe(s) ... a just and reasonable *area* ceiling rate ... higher than the rate to be paid by Buyer to Seller." (emphasis added). The two orders of the FPC in issue as well as the NGPA do not purport to deal with *area* rates at all but, instead, establish *national* rates. Nevertheless, Amoco would, relying upon the circumstances surrounding the execution of the eleven contracts, construe *area* as synonymous with *national*, in keeping with the parties' intent, so as to say that each of their wells selling gas intrastate is to be priced as interstate gas if the same gas from the same well actually sold interstate would be entitled to claim the price under the current regulations for interstate gas. The escalation clause read literally, and *without regard to the circumstances*, would deny escalation to Amoco because no *area* price appears to have been set by any authority. Our holding does not rest upon the distinction between "area" and "national" rates, nor should it. The need to construe so as to achieve the parties' true intent has led Amoco to this particular construction the same as it has led this court to the con-

struction given the whole of the escalation clause.

In *Energy Reserves Group v. Kansas Power & Light,* 230 Kan. 176, 630 P.2d 1142 (1981), *aff'd* 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983), an escalation clause was keyed to higher prices subsequently established by "any federal or Kansas or governmental authority having jurisdiction in the premises." In holding that it was the intent of the parties that the subsequent NGPA triggered the escalation clause, the court quoted, and relied upon, an earlier opinion of the Federal Energy Regulatory Commission as follows:

> Since the words they used were a product of the then prevailing regulatory scheme under the Natural Gas Act, we must attempt to ascertain, to the extent possible, what the parties intended to accomplish in the context of that regulatory environment and to give effect to that intent in light of the changed circumstances brought about by enactment of the NGPA.
>
> .       .       .       .       .
>
> [W]e do not believe their intent should be thwarted merely because they failed to foresee that the Congress would assume the ratemaking function previously delegated to the Commission....

630 P.2d at 1149. Similarly we hold that the evident intent of Amoco and Delhi is not to be thwarted because they contracted in terms of the prevailing regulatory scheme; consequently, "contract vintaging" becomes "well vintaging" and "area prices" become "national prices" because neither is inconsistent with an evident intent to achieve parallel prices for parallel wells. This interpretation is consistent with *Pennzoil Co. v. Federal Energy Regulatory Com'n,* 645 F.2d 360 (5th Cir. 1981), *cert. denied* 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982), which applied NGPA to *area* escalation clauses, holding:

> Ambiguity easily arises when the contract is applied to its subject matter in changed circumstances. Area rate clauses are certainly ambiguous as applied to the collection of currently available ceil-

ing rates for natural gas. *A contract should be interpreted in light of the changed circumstances to accomplish what the parties intended.* (Emphasis added)

645 F.2d at 388.

Our discussion makes unnecessary any address of those additional points of error relating to the construction to be given the escalation clause. As to points relating to attorney's fees, the briefs concede that attorney's fees are the right of the prevailing party and that the amount found in the judgment is reasonable.

Affirmed.