## REMINGTON RAND, INCORPORATED, v. THE

### SUGARLAND INDUSTRIES.

No. 7531. Decided June 25, 1941.
Rehearing overruled July 23, 1941.
(153 S. W., 2d Series, 477.)

*John Schumacher* and *H. Fletcher Brown*, both of Houston, for plaintiff in error.

On the question of ambiguity. Morgan v. Turner, 23 S. W. 284; Curry v. Texas Co., 8 S. W. (2d) 206; Hill County v. Colonial Cr. Co., 18 S. W. (2d) 787.

*Pearson & Pearson*, of Richmond, and *Joe Corman*, of Sugarland, for defendant in error.

On the construction of the contract. House v. Faulkner, 61 Texas 308; Brown v. Stoker, 102 S. W. (2d) 248; Owens v. Tedford, 269 S. W. 418.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

Remington Rand, Inc., sued The Sugarland Industries for rentals alleged to be due and unpaid on accounting machines furnished defendant under a written contract dated September 2, 1932, and purchase order No. 572.

The following (omitting formal parts and provisions not material here) are the provisions of the contract, all italics used therein, and in this opinion, being ours:

"Remington Rand, Inc., herein styled Lessor, hereby agrees to install at the place of business of the undersigned Lessee * * * and hereby leases, and the Lessee hereby rents the equip-

ment hereinafter specified, *upon the terms and conditions herein set forth,* it being expressly understood * * * said equipment may be removed by the Lessor or its agents at any time after *the termination of this contract as herein set forth.*

"2. Automatic Key Punches    @ $15.00 per mo.   $30.00
   *   *   *

"1 Alphabetical Key Punches    @ $35.00   "   "   $35.00
   *   *   *

"1 6 Unit Printing Tabulators    $195.00   "   "   $195.00

"1 Sorters (non-counting)    @ $35.00   "   "   $35.00
   *   *   *

             Total Monthly Rentals      $295.00

"Each multiple translator supplied in excess of those to be furnished without extra charge as above provided shall be charged for at the rental price in effect therefor at the time the order for such Translator is received. Such rental price shall be paid in equal monthly payments.

     *     *     *

*"Additional equipment will be installed and leased under the terms and conditions hereof at the rate of rental therefor in effect at the time the order for such equipment is received.*

     *     *     *

"MAINTENANCE.

"In cities where the Lessor has an office, or headquarters of a representative, the Lessor shall keep the equipment in working order and make all necessary repairs thereto, except as hereinafter provided, * * If the Lessee uses with *machines covered hereby,* cards that have not been purchased from Lessor, the Lessee agrees to pay Lessor the cost of repairing and maintaining *such machines.* * * *

"TERMINATION.

"This lease shall continue in force with respect to *each machine installed in accordance with the provisions hereof for the term of one (1) year from the date each such machine is placed on rental.* This Lease may be cancelled at the expiration of the said term of one (1) year provided thirty (30) days notice in writing of the desire to terminate the same shall have been sent by registered mail by either party to the other before the expiration of eleven (11) months after the date each such *machine is placed on rental. Rental on each machine installed*

*is to be paid monthly for a minimum period of twelve* (12) months, unless this Lease is terminated by the Lessor.

"If at the expiration of eleven (11) months, as heretofore provided, a cancellation notice has not been served this contract becomes a continuous automatic yearly renewal contract. Rental *on each machine covered by this contract to be paid monthly for a minimum renewal period of twelve (12) months, unless this Lease is terminated by the Lessor. Discontinuance of equipment on this renewal basis can be effected provided notice is sent * * * by either party to the other before the expiration of eleven (11) months after the date renewal contract period became effective.*

\* \* \*

"GENERAL.

\* \* \*

"*No representation or statement made by any employee, agent or representative of the Lessor, shall be binding upon the Lessor as a warranty or otherwise except as expressly set forth herein.*

\* \* \*

"TERMS OF PAYMENT.

"The rental upon *each machine* shall accrue from the date of the completion of the installation hereof in working order at the place of business of the Lessee as above provided, and upon each Multiple Translator in excess of those provided for without extra charge in the contract from the first day of the month following the month in which it is shipped by the Lessor to the Lessee.

"All rentals are due and payable on the last day of each and every month. All invoices for cards, accessories, supplies or other charges are due and payable upon receipt thereof. \* \* \*.

WITNESS: P. F. O'Deay    (Signed) The Sugarland Industries,
                                                Lessee
Accepted Sept. 2, 1932        By Walter C. Burer - Auditor
REMINGTON RAND, INC.
By H. R. Russell, General Manager
Powers Accounting Machine Division"

The contract was signed by defendant and the witness

O'Deay on August 22, 1932, and was by O'Deay sent to plaintiff, and was accepted by plaintiff September 22, 1932.

"Order No. 572 (omitting formal and immaterial parts) dated December 7, 1933, where lessee ordered the articles therein enumerated, is as follows:

| QUANTITY | ARTICLES | PRICE |
|---|---|---|
| One (1) | Model 2-620 Alphabetical Tabulator with three units, grand total device, | $225.00 |
| Two (2) | Multiple Translators - No charge *This machine to apply on our present contract.* Please deliver this machine to 1113 Vine Street to be picked up by our truck. Thanks." | |

The purpose of the suit was to collect unpaid rentals in the sum of $2,175.12 alleged to have accrued upon machines furnished under the terms of the foregoing contract and purchase order, together with interest from the last days of the respective months in which the aggregate rentals accrued.

The controversy between the parties arose out of an attempted cancellation by defendant of the contract. On June 15, 1934, defendant gave plaintiff written notice that it had elected to cancel the lease on September 1, 1934. The request for cancellation was not acceded to by plaintiff as being effective to terminate further obligation on the part of defendant to pay rental. Each machine described in the contract, with the exception presently to be noted, remained on installation subject to the use of defendant until January 1, 1935. Upon refusal of defendant to pay the rentals alleged to have accrued according to the terms of the contract, this suit was filed.

Two of the machines described in the contract were removed by agreement of the parties, the tabulator, about June 1, 1934, and one of the automatic key punches about September, 1935. No rental is sought for these.

Plaintiff alleged with respect to the rentals due on the alphabetical key punch and the sorter (each of which was installed, or placed on rental, on January 16, 1931) that, hav-

ing come under the yearly renewal provision of the contract at the rate of $35.00 per month each, defendant was obligated upon same for the months of September, October, November and December of 1934, and for the first 16 days of January of 1935; and that with respect to rentals due for the automatic. key punch (installation completed January 2, 1932), it also having come under the automatic renewal provision at $15.00 per month, defendant was obligated upon same for the months of September, October, November and December of 1934, and for the first 2 days of January 1935. The total of the rentals sued for by plaintiff for the machines described in the contract is $316.12.

The principal item sued for is the rental alleged to have accrued upon the alphabetical tabulator described in the purchase order. Plaintiff alleged it was installed and placed on rental on May 1, 1934, and that rentals were paid thereon at the stipulated rate of $225.00 per month for only four months of the one year term after date of installation, and that defendant failed and refused to pay rentals accrued thereon for the remaining months of such term (September, October, November and December of 1934 and January, February, March and April of 1935), at the rate of $225.00 per month. An itemized exhibit in evidence shows the aggregate accruals, under plaintiff's construction of the contract, to be $1,240.00 for 1934, and $36.12 for 1935, to May 1st of that year. The total ($2,176.12), with interest, was sued for.

Defendant alleged that on or about June 15, 1934, it gave written notice to plaintiff that it desired to and did terminate and cancel all then existing contracts, *"if any"* as of September 1, 1934. After setting out the termination provisions of the contract it alleged that these provisions, "if ever in force," covered the automatic key punch, the sorter and the alphabetical key punch described in said contract; that "said machines" were installed and placed on rental under its terms of September 2, 1932, and that these machines, *"or instruments substituted in the place thereof,* were used by the defendant until September 1, 1934, * * *."

Defendant alleged as to the purchase order, among other things, that if its "words, 'This machine to apply on our present contract,' had or have *any meaning,"* it was that "said machine should replace the tabulator removed (the one described in the contract) *and should be substituted therefor* with the

same force and effect as if * * * placed on use at the date the contract tabulator was placed on use," which date it alleged to be the date of the contract; that if any connection existed between the purchase order and the contract, which was denied, the court should apply to the order the meaning with respect to substitution just stated, and that such was the meaning intended by the parties at the time the contract was executed. By trial amendment it alleged the termination provisions of the contract gave and were intended to give to defendant the right of termination at the end of any year during its existence, and that such right would govern all property thereafter placed with defendant.

After the trial had been in progress several days defendant filed what it denominates a supplemental answer in which it alleged, "in addition to" the matters theretofore alleged, that "by the use of the word 'machine' the parties meant the entire property leased as one unit or battery"; and that "by * * * the word 'equipment' * * *, except where used in connection with the word 'additional,' *the parties * * * meant all of the property described in the contract considered as a whole or one machine."*

Defendant does not allege that in the making of the contract there was any overreaching, fraud, or accident, or any mutual mistake of parties. So far as the pleadings and evidence are concerned the parties deliberately chose the words and stipulations of the contract to convey their meaning. The defendant apparently contents itself, with respect to its pleading, with allegations of what the parties "meant and intended" by their words and stipulations.

The parties agreed at the outset of the trial that the machines described in the contract were first installed on the following dates respectively: Both the alphabetical key punch and sorter, on January 16, 1931; the automatic key punch, January 2, 1932; and the printing tabulator, April 15, 1931. It was agreed also that the tabulator described in the purchase order was installed on May 1, 1934.

The trial court filed findings of fact covering several pages. The first eight relate to the incorporations respectively of Remington Rand, Inc. under the laws of Delaware, Remington Rand, Inc. under the laws of Maryland, and the dissolution of the latter, and to transactions between themselves; and be-

tween themselves and Remington Rand Business Service, Inc. and plaintiff, whereby, in effect, the obligations created by the contract and purchase order sued upon became effective as between plaintiff and defendant. It found that at the time Mr. Burer signed the contract he and defendant's attorney, Mr. Curtis, discussed with O'Deay as a representative of plaintiff's predecessor, some of the terms of the contract; that O'Deay stated to them the words "additional equipment," as used in the contract, referred to property other than that which might thereafter "be substituted for any member of the *unit*" composed of the items of equipment mentioned in the contract; and that "if any substitutions were made * * * such *substituted property* would not be additional equipment but would * * * be considered * * * as if * * * originally listed," and as if then installed; *and that the property listed "constituted and would be considered as one unit, machine or battery"*; that the defendant so understood the contract, and "such was the intent of the said parties," and that the word "machine" appearing in the contract is ambiguous, and that by its use *the parties meant that the entire property described "constituted one unit or battery."* The court concluded in this connection that the "installation date" of the machine described in the purchase order, (dated December, 1933) was September 2, 1932, and that September 2, 1932, was "also the installation date of the property described in the second contract."

The court also made the following findings:

"The said property * * * constituted a unit or 'one machine' and that the use of all of same together was necessary in order to obtain the effective and efficient use of said leased property, and that neither the automatic key punch, the alphabetical key punch, the sorter nor the printing tabulator could be effectively and efficiently used alone and without the use at same time of all of the other leased property; * * * that if the contract was terminated as to any part of the said machine and not as to others, that defendant would have on hand part or parts of said machine, which could not be used; that * * * the parties intended * * * the contract, as to the listed property and/or (that) substituted therefor, should be terminated at the same date (and) that *any other construction of said contract would be injurious, harsh and unreasonable.*"

There are other findings concerning a contract of date December 15, 1930, (referred to as the first contract) between

plaintiff and Remington Rand Business Service, Inc., with terms identical with those of the contract sued on (but with an immaterial difference in machine and monthly listing), which are made the basis of a conclusion that the "installation date" of the machine described in the purchase order, and the "installation date" of the equipment described in the contract of September 2, 1932, (denominated in the findings as the second contract) are the same. They need not be further noticed, however, as they were erroneously made contrary to the agreement of the parties theretofore made as to the respective dates of installation above referred to, which are all subsequent to the date of the first contract.

The trial court rendered judgment that plaintiff take nothing. The Court of Civil Appeals affirmed the judgment. 122 S. W. (2d) 728. The writ was granted "on all assignments of error."

The foregoing findings and conclusions, among others not necessary to state, form the basis of the trial court's judgment, and reflect the construction by the courts below of the contract and purchase order sued upon.

The trial court predicated its conclusions largely upon the parol testimony of Mr. Burer, who, it will be observed, signed the contract for defendant. He was permitted to testify, over the plaintiff's objections, that at the time the contract sued on was executed he negotiated with Mr. O'Deay (O'Deay, it will be observed, signed the conract as a witness) ; that he "first refused to sign a new contract, but Mr. O'Deay insisted that because we were making some terrific changes his company was after him to get a new contract, * * *"; that in his discussion with O'Deay "*it was definitely understood that all rental dates on the equipment* that we then had * * * would begin anew at that time, and all this back stuff was washed out"; also that O'Deay stated the words "additional equipment" referred to property other than that which might be thereafter "substituted" for that described in the contract; that Mr. Curtis, O'Deay and he were in the office a short time "when this thing (the contract) was signed and Mr. Curtis gave his opinion that we were leasing a group of of equipment, certain machines to do certain work"; that if any other machine was substituted for the equipment we had, "it would still be under contract, but if we would * * * get another machine from Remington Rand, * * * that would be additional equipment, and that that ad-

ditional equipment would go under the terms of the contract; we would have to keep it for the term specified, but if we substituted any equipment, it would be a different matter, as part of a battery of machines, one of which could not work without the other."

Testimony of Mr. Burer of conversations with O'Deay concerning the execution of the purchase order, also admitted over plaintiff's objection, is as follows:

"Q. Do you have anything referring to this order, which is called No. 572? Was there any specific discussion between you and any representative of the plaintiff in this case, in reference to the meaning of the word *'apply' as used in that contract?*

"A: Yes, sir, there was.

"Q: Who was it with?

"A: Mr. O'Deay.

"Q: Will you please state what this discussion was, and at the same time state the matters that led up to the execution of this order No. 572?

"A: Mr. O'Deay requested this order, that he might have something to send to *his so-called superiors*. At that time I asked Mr. O'Deay the direct question, I said: *'does taking this machine tie us up on a twelve months contract?*

"Q: What did he say?

"A: He said *'it does not; it is a substitution.*

THE COURT: It is what?

"A: It is a substitution.

"Q: (by Mr. Peareson) : A substitution for what?

"A: For the other tabulator.

"Q: Which tabulator was that?

"A: The tabulator that was previously in use, the one covered by the September 2nd contract.

"Q. The one that was in use at the time that contract was executed?

"Yes, sir."

The respective contentions of the parties are stated in the opinion of the Court of Civil Appeals, to which reference is here directed. It states also what is considered to be the basic

idea underlying the trial court's findings, and concludes that the "main and practically the only question to be determined * * * is the *termination date* of the lease," as to the *"various articles* enumerated in the contract * * *, and the * * * tabulator referred to in the purchase order."

We cannot agree either with the construction of the contract evidenced by the trial court's findings, or with the statement of the law, or its application, by the Court of Civil Appeals in approving such construction. Nor can we agree with the statement of what constitutes the main question to be determined.

The lease contract sued upon provides that defendant rented "the equipment * * * specified, *upon the terms and conditions* * * * *set forth"* in the contract. Five machines are described as the equipment leased. It is stipulated that the equipment may "be removed by the lessor * * * at any time *after the termination of the contract as therein set forth.* The contract specified that "rental on each machine installed is to be paid monthly *for a minimum period of twelve months* * * *."* It stipulates how the lease may be cancelled. The termination provisions are unambiguous. They are clear to the effect that after the lease has continued in force for one year "with respect to *each machine installed* cancellation may be had upon thirty days' written notice "by either party to the other before the expiration of eleven (11) months after the date *each such machine is placed on rental."* It is clearly stipulated also that if, at the expiration of the period mentioned, a cancellation notice has not been served "this contrace becomes a continuous automatic yearly renewal contract"; and further in connection with this provision that *"rental on each machine covered by this contract"* is to be paid monthly for a *"minimum renewal period of twelve (12) months, * * *."*

It is pointed out in connection with the stipulations as to the period of continuation of the lease with respect to "each machine installed," and with respect to when each is *"placed on rental,"* that rental upon each machine *"shall accrue from the date of the completion of installation."* In other words the lease continues in force as to each machine described therein from the date it is "placed on rental," which date is identical with its installation date.

The "termination" provisions of the contract do not provide, as held by the Court of Civil Appeals, for cancellation on the basis of *one* "termination date of the lease" as to the "various articles enumerated in the contract." On the other hand, the contract is so conditioned with respect to cancellation as to forbid its termination by the lessee on such basis. The "various articles" referred to are the machines described in the contract, which carry their varying dates of installation. We find no basis for the holding that the contract provides for cancellation on the basis of *the same termination, or same installation, date,* for all of the machines. Such a finding is at variance with the provisions of the lease, and with the agreement of the parties as to the respective dates of installation. The findings as to "substitution," as to the property intended to be embraced in the word "machine" and as to the meaning of "additional equipment," are at variance with the provisions of the contract and purchase order.

The trial court made the above findings and conclusions upon the view the contract is ambiguous.

Even if ambiguous (which it is not as to any of its provisions applicable to facts upon which the parties have not agreed by stipulation), the testimony of Mr. Burer was not admissible to either vary its meaning or show that the language was employed "in a sense different from *its* ordinary meaning." Morrison v. Hazzard, 99 Texas 583, 92 S. W. 33. Such evidence is admissible to "explain an ambiguity" when it is "consistent with the writing," but not to vary its terms. Higginbotham Cattle Co. v. Whaley & Lewis (Com. App.), 41 S. W. (2d) 34; Distributors Investment Co. v. Patton (Com. App.), 130 Texas 449, 110 S. W. (2d) 47.

The trial court concluded further that "even though the contract be held not ambiguous," its meaning was nevertheless in accordance with the findings made.

The Court of Civil Appeals states that oral testimony "is not generally admissible to contradict or vary the terms" of an unambiguous contract, but that there is also a rule "perfectly consistent" with the rule referred to, that written instruments, *whether ambiguous or not,* are to be interpreted according to their subject matter, and that oral testimony is admissible for the purpose of applying the contract to the subject matter, and that in case of *"ambiguity then appearing,"*

the language may read in the light of the environment in order to establish the facts under which the agreement was made; and applied the rule as stated.

1 We cannot agree that parol evidence is admissible to determine whether a writing, clear in terms, may become ambiguous, and that *in the event ambiguity appears, evidence of surrounding circumstance may be offered to show the intention of the parties*. The rule as applied by this Court is as follows, as stated in the recent case of Lewis et al v. East Texas Finance Company, 136 Texas 149, 146 S. W. (2d) 977, 9 TSCR 146:

"If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, *it is not ambiguous. It follows that parol evidence is not admissible to render a contract ambiguous,* which, on its face, is capable of being given a definite certain legal meaning. This rule obtains even to the extent of *prohibiting proof of circumstances surrounding the transaction* when the instrument involved, by its terms, plainly and clearly discloses the intention of the parties, or is so worded that it is not fairly susceptible of more than one legal meaning or construction."

The opinion in the recent case of Anderson & Kerr Drilling Co. v. Bruhlmeyer (Com. App.), 134 Texas. 574, 136 S. W. (2d) 800, 127 A. L. R. 1217, is cited in the Lewis case and states the rule as applied by this Court. It recognizes, as does the case quoted from, that when an instrument does not by its terms plainly disclose the intention of the parties, it may be ascertained, "not solely from the words of the instrument, but from its language when read in the light of the circumstances surrounding the transaction"; and cites some of the cases relied upon by the Court of Civil Appeals in the present cases in support of the rule applied by it, notably Colquitt v. Eureka Producing Co. (Com. App.), 63 S. W. (2d) 1018 and Gulf Production Co. v. Spear, 125 Texas 530, 80 S. W. (2d) 452. These cases are in harmony with Lewis v. Finance Co. and the Bruhlmeyer case, but do not support the rule as stated and applied by the Court of Civil Appeals.

It is unnecessary to discuss the other cases cited in the opinion of the Court of Civil Appeals, some of which contain statements not in harmony with the above quoted rule, further than to say such statements are inapt. It may be noted in this connection that the expressions of the parties simul-

taneous with the making of the contract are never treated as "surrounding circumstances." Wigmore on Evidence, Sec. 2471. To so treat them would be to remove the protection inherent in written instruments.

To construe the purchase order as not ordering "additional equipment" pursuant to the provision of the contract that "additional equipment will be * * * leased" under its *terms* and *conditions* at rental rates "in effect at the time the order * * * is received," is to give it a meaning inconsistent, to say the least, with the language of the two instruments. There is no language in either subject to the construction adopted by the courts below, that the "machine" described in the order was, as stated in the trial court's findings, "to be substituted for and become a part of the original machine." The "machine" ordered was "additional equipment" and, under the language of the order (written by Mr. Burer) considered with that of the contract, was an additional machine, and was to be applied as such "on our present contract." If such is not the obvious meaning of the language in question it is certainly a meaning consistent with the language.

**2** We find no basis upon which to consider whether the terms of the contract are inequitable. They were agreed upon by the parties and defendant makes no claim either that it was lacking in business acumen or was imposed upon. No ground for reformation is presented. The machines described in the contract constituted defendant's bookkeeping equipment, and it rested with defendant to determine whether it would have its bookkeeping done by machines under the supervision of an operator, or by personal bookkeepers and accountants.

Eliminating the facts erroneously considered we find none upon which judgment could be correctly rendered for defendant, and the Court of Civil Appeals erred in affirming a judgment in its favor.

Assignments properly complaining of this error upon the grounds discussed herein, and complaining that judgment should have been rendered by the trial court in favor of plaintiff, are before us in its application for the writ. The writ was granted upon all assignments, but we have found it necessary to pass upon only those raising the questions discussed, which are determinative of the case. These assignments are sustained. The judgments of the courts below are reversed

and judgment is here rendered for plaintiff for $2,176.12, with interest upon $1,240.00 of such amount from January 1, 1935, to the date of the judgment, and upon $936.12 of the amount from May 31, 1933, to such date, at the rate of 6% per annum.

Opinion adopted by the Supreme Court June 25, 1941.

Rehearing overruled July 23, 1941.