LOVING CO.-final 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-92-247-CV





LOVING COUNTY DISPOSAL, INC., FRESNE-BUTLER-LONG CORPORATION,


AND DONALD C. FRESNE, INDIVIDUALLY,



 
 APPELLANTS


vs.





DON RAY GEORGE & ASSOCIATES, INC.,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT



NO. 91-5980, HONORABLE JOSEPH H. HART, JUDGE PRESIDING



 





 Loving County Disposal, Inc., Fresne-Butler-Long Corporation, and Donald C.
Fresne, individually, appeal from a judgment rendered in a non-jury trial. The trial court held
Loving County Disposal, Fresne-Butler-Long, and Fresne jointly and severally liable to Don Ray
George & Associates, Inc. ("DRGA") in the amount of $395,108.63 plus prejudgment and
postjudgment interest. Additionally, Loving County Disposal and Fresne-Butler-Long were held
jointly and severally liable for attorney's fees. We will affirm the trial-court's judgment in part
and reverse in part.



BACKGROUND


 In 1986, Loving County Disposal was formed to construct a hazardous-waste
disposal site in Loving County, Texas. In August of that year, Loving County Disposal entered
into a contract with DRGA whereby it would provide engineering services necessary to Loving
County Disposal's application for various permits required for a hazardous waste disposal site
facility. DRGA's fees were to be invoiced at its usual rates and paid on a monthly basis.

 DRGA provided services for some time without problem; however, by June 1989,
Loving County Disposal had fallen behind on payment of DRGA's monthly invoices. In October
1989, Loving County Disposal and DRGA agreed that Loving County Disposal would pay DRGA
a $100,000 completion bonus (the "first bonus") ninety days after issuance of the final permits for
the project in exchange for a forbearance on invoice payments until January 1990 (the "October
1989 agreement").

 In February 1990, Fresne and Fresne-Butler-Long became involved in the project. 
Fresne is a shareholder, officer, and director of Fresne-Butler-Long. Fresne-Butler-Long agreed
to provide Loving County Disposal with immediate financing for the permitting process and to
pursue permanent financing for the project. In exchange, Fresne-Butler-Long would receive fifty-one percent of Loving County Disposal stock upon closing of the permanent financing and annual
management fees of $300,000 in the first year after completion and $250,000 annually thereafter.

 At Fresne's direction, RMC Environmental Services, Inc. ("RMC"), a corporation
in which Fresne owned a significant interest and served as chairman of the board, provided the
interim financing. In April 1990, RMC agreed to provide interim financing to Loving County
Disposal in the form of nine monthly allotments of $40,000 each. As a condition to this loan,
RMC received the exclusive right to perform environmental analysis services for the project when
it began operations. Loving County Disposal used a portion of this financing to make payments
to DRGA.

 In August 1990, Loving County Disposal again fell behind in making payments on
DRGA's invoices. After some negotiation, Fresne-Butler-Long and DRGA entered into an
agreement (the "September letter agreement") to cure the default. Pursuant to this agreement,
Loving County Disposal and Fresne-Butler-Long executed a promissory note to DRGA to cover
the invoice balance through August 1, 1990. The note was to be paid in monthly installments of
$5,000 each. Fresne-Butler-Long also agreed to pay, through Loving County Disposal or
otherwise, all subsequent invoices. The parties dispute whether Fresne orally indicated he would
personally guarantee any of these obligations. Fresne did not execute a written guaranty
agreement.

 In September 1990, at Fresne's request, Loving County Disposal conveyed thirty-six percent of its stock to Fresne-Butler-Long and fifteen percent of its stock to RMC, and named
Fresne chairman of Loving County Disposal's board of directors. Fresne-Butler-Long had yet
to secure permanent financing for the project.

 In December 1990, after DRGA's invoices again went unpaid, Loving County
Disposal, Fresne-Butler-Long, and DRGA entered into an amendment to the September letter
agreement (the "December amendment"). Under this agreement, DRGA would continue to send
invoices to Loving County Disposal, but would extend the due date for payment to February 15,
1991, for all services rendered through February 1, 1991. Loving County Disposal would pay
an additional $100,000 completion bonus (the "second bonus") one hundred and twenty days after
the Environmental Protection Agency ("EPA") accepted or rejected the permit application. 
Fresne-Butler-Long agreed to guarantee payment on all then-outstanding and future invoices. At
this time, Fresne represented that Fresne-Butler-Long had secured sufficient financing to fulfill
all its obligations on the project. DRGA continued to provide services on the project.

 On February 6, 1991, Governor Ann Richards requested a moratorium on the
issuance of hazardous-waste permits by the Texas Water Commission. As a result, Loving
County Disposal's February 20th hearing before the Commission was postponed indefinitely. On
February 15th, payment for services DRGA rendered through February 1st became due under the
terms of the December amendment. Fresne notified DRGA that the moratorium had changed the
financing situation. He represented that the financial backers required that the funds owed DRGA
be placed in an escrow account to be released when Loving County Disposal's hearing was
rescheduled or the moratorium lifted. DRGA did not accept this arrangement, and this litigation
soon followed.

 DRGA brought this cause against Loving County Disposal, Fresne-Butler-Long,
and Fresne, individually, alleging breach of contract, anticipatory breach, and fraudulent
inducement. DRGA sought to hold Fresne individually liable for Fresne-Butler-Long's debts
under the principles of alter ego and sham to perpetrate a fraud.

 At trial, while admitting that DRGA was entitled to recover the value of the work
performed, appellants contested the extent of their liability. Loving County Disposal admitted
liability for the services rendered and invoiced, but denied any liability for the completion
bonuses. Fresne-Butler-Long also denied liability for the completion bonuses and challenged the
extent of its liability on the promissory note and invoiced amounts. Fresne denied any individual
liability.

 After trial before the court, the trial court rendered its judgment holding Loving
County Disposal, Fresne-Butler-Long, and Fresne jointly and severally liable for the value of the
services rendered and the present value of the completion bonuses, plus prejudgment and
postjudgment interest. Loving County Disposal and Fresne-Butler-Long were also held liable for
DRGA's attorney's fees.

 Loving County Disposal, Fresne-Butler-Long, and Fresne appeal. (1) Two issues are
presented in this appeal: (1) whether Fresne can be held individually liable to DRGA, and (2)
whether Fresne-Butler-Long and Fresne are liable for the completion bonuses. Appellants
challenge Fresne's personal liability in their first four points of error and Fresne-Butler-Long and
Fresne's liability for the completion bonuses in their last two points.



DISCUSSION


 In their first two points of error, appellants argue that the trial court erred in
holding Fresne individually liable because there was no evidence to support a finding of actual
fraud by Fresne as a shareholder of Fresne-Butler-Long and no evidence of any direct personal
benefit to Fresne.

 Appellants contend that a finding of actual fraud by Fresne is required to pierce the
corporate veil of Fresne-Butler-Long and to hold him, as a shareholder, individually liable. 
Appellants rely on article 2.21 of the Texas Business Corporation Act. (2) Tex. Bus. Corp. Act
Ann. art. 2.21 (West Supp. 1993); see also Farr v. Sun World Sav. Ass'n, 810 S.W.2d 294, 296
(Tex. App.--El Paso 1991, no writ). Appellants argue that article 2.21, as amended, precludes
constructive fraud as a ground for piercing the corporate veil, overturning the earlier rule set out
in Castleberry v. Branscum, 721 S.W.2d 270 (Tex. 1986). See Farr, 810 S.W.2d at 296. Fresne
contends that there is no finding of actual fraud or personal benefit as article 2.21(A)(2) requires. 
We agree with appellants' interpretation of article 2.21, but we disagree with the assertion that
it controls the disposition of this cause.

 By its terms, article 2.21 limits only the liability of shareholders. In the immediate
case, however, Fresne assumed other roles in the corporations. Fresne was an officer and director
of Fresne-Butler-Long, in addition to being a shareholder. Moreover, Fresne served as the agent
for Fresne-Butler-Long in its transactions with Loving County Disposal and DRGA. Fresne was
also a shareholder of RMC and the chairman of its board of directors. Finally, from September
1990 forward Fresne was chairman of the board of Loving County Disposal.

 The findings of the court relevant to Fresne's individual liability are as follows:



18. To induce Plaintiff [DRGA] to provide further services in August and
September, 1990, Fresne, on his own behalf, and on behalf of FBL
represented to Plaintiff that FBL had the financial wherewithal to pay for
Plaintiff's services incurred by LCD and to be incurred in the future.


19. Fresne falsely represented to Plaintiff that he would provide financial
information showing the ability of FBL to stand good for its undertakings.


20. As part of the inducement for Plaintiff to continue providing services, Fresne
caused FBL and LCD to sign the letter agreement on or about September 13,
1990 which was received into evidence as Plaintiff's Exhibit 16. FBL
agreed to be jointly liable with LCD.


20a. By the representations he made in numbers 18, 19 and 20, Fresne caused
Plaintiff to accept FBL instead of Fresne as a signatory to the obligations
contained in the letter agreement received into evidence as Plaintiff's Exhibit
16.


21. When he made the representations described in numbers 18, 19 and 20
Fresne knew or should have known that FBL did not have and would not
have the financial wherewithal to pay for Plaintiff's services incurred and to
be incurred in the future.


. . . .



25. To induce Plaintiff to provide further services in December, 1990, Fresne
represented to Plaintiff that additional financing for LCD was in place from
which Plaintiff would be paid all sums due to it, including additionally
accruing sums, by February 1, 1991.


26. As a further inducement to Plaintiff to provide services, Fresne represented
that Plaintiff would be entitled to receive an additional completion bonus of
$100,000.


27. When he made the representations described in numbers 25 and 26, Fresne
knew or should have known that such additional financing for LCD was not
in place and could not be obtained under the circumstances existing at that
time.


28. All representations by Fresne were made recklessly.


. . . .



32. In reliance upon Fresne's representations and the "Amendment to Letter
Agreement", Plaintiff continued to provide services through February, 1991.

. . . .



50. Fresne structured his involvement with LCD in a way that he could receive
significant personal benefit, but was not personally at risk.



The trial court also made the following conclusions of law:



3. Fresne, as an Officer and Director of FBL, used the corporate fiction of FBL
as a sham to perpetrate a fraud upon Plaintiff.


4. Fresne's representations were material, false, and were made in a reckless
manner to Plaintiff which relied upon them to its detriment. As a result
Plaintiff was induced to provide services it otherwise would not have
provided.


5. All Defendants are jointly and severally liable for all sums due to Plaintiff
save and except attorney's fees.



 These findings indicate two grounds for holding Fresne individually liable: (1) that
he operated Fresne-Butler-Long as a sham to perpetrate a fraud, and (2) that he recklessly made
fraudulent misrepresentations as an officer and director of Fresne-Butler-Long. The findings
regarding Fresne's misrepresentations support a conclusion of fraud or fraudulent inducement. 
See Trenholm v. Ratcliff, 646 S.W.2d 927, 930 (Tex. 1983); Barth v. Muir, 598 S.W.2d 729, 731
(Tex. Civ. App.--El Paso 1980, no writ). Appellants assert that the trial court's oral
pronouncement that it found no independent tort of fraud precludes recovery from Fresne. 
However, if the trial court's oral statements conflict with its written findings of fact, the written
findings control. Gasperson v. Madill Nat'l Bank, 455 S.W.2d 381, 387 (Tex. Civ. App.--Fort
Worth 1970, writ ref'd n.r.e.).

 Because the trial court alternatively based Fresne's liability on his
misrepresentations, the determination whether the evidence is sufficient to hold Fresne liable as
a shareholder under article 2.21 does not control the disposition of this cause. Accordingly, we
overrule appellants' first and second points of error.

 In their third and fourth points of error, appellants contend that the trial court erred
in holding Fresne individually liable because there was no evidence or insufficient evidence to
support a finding that Fresne committed actual fraud in negotiating the September letter agreement
or the December amendment and there was no evidence or insufficient evidence to support a
finding that Fresne committed fraud as an officer and director of Fresne-Butler-Long. 

 A corporate agent, officer, or director who knowingly participates in a tortious or
fraudulent act may be held individually liable, even though he acted as an agent for the
corporation. Grierson v. Parker Energy Partners, 737 S.W.2d 375, 377 (Tex. App.--Houston
[14th Dist.] 1987, no writ); Barclay v. Johnson, 686 S.W.2d 334, 336 (Tex. App.--Houston [1st
Dist] 1985, no writ); Penroc Oil Corp. v. Donahue, 476 S.W.2d 849, 851 (Tex. Civ. App.--El
Paso 1972, writ ref'd n.r.e.). It is not necessary to pierce the corporate veil to impose such
liability. Barclay, 686 S.W.2d at 337; Permian Petroleum Co. v. Barrow, 484 S.W.2d 631, 634
(Tex. Civ. App.--El Paso 1972, no writ). It is not necessary that the officer personally benefit to
be held individually liable. Gardner Mach. Corp. v. U.C. Leasing, Inc., 561 S.W.2d 897, 899
(Tex. Civ. App.--Beaumont 1978, writ dism'd).

 Directors of corporations may be held personally liable to those injured by their
false representations, even if made unknowingly, if the representations concerns matters pertaining
to the corporation of which they should have been aware. Kinkler v. Jurica, 19 S.W. 359, 360
(Tex. 1892); Seale v. Baker, 7 S.W. 742 (Tex. 1888); Barclay, 686 S.W.2d at 336-38; Dollar
v. Lockney Supply Co., 164 S.W. 1076, 1079 (Tex. Civ. App.--Amarillo 1914, no writ); College
Park Elec. Belt Line v. Ide, 40 S.W. 64, 65-66 (Tex. Civ. App.), writ dism'd, 39 S.W. 915 (Tex.
1897).

 Appellants contend that the evidence is legally and factually insufficient to support
the findings that (1) Fresne falsely represented the financial wherewithal of Fresne-Butler-Long
in negotiating the September letter agreement; (2) DRGA relied on these representations in
agreeing to the September letter agreement; (3) Fresne, in negotiating the December amendment,
falsely represented that financing was in place to meet the obligations to DRGA; (4) DRGA relied
on these representations to its detriment; and (5) Fresne should be individually liable for making
these representations.

 The evidence shows that Fresne made affirmative representations concerning
Fresne-Butler-Long's ability to satisfy its obligations and concerning its financial condition in
general and that these representations were material to the transactions between Fresne-Butler-Long, Loving County Disposal, and DRGA. There is evidence that these statements were false
when made and that Fresne knew or should have known of their falsity. The evidence shows that
Fresne made these statements with the intent to induce DRGA to agree to the September letter
agreement and the December amendment. DRGA relied on these statements to its detriment by
continuing to extend services to Loving County Disposal without payment. The trial court's
findings of fact summarize this evidence.

 We attach to findings of fact the same weight that we attach to a jury's verdict upon
jury questions. City of Clute v. City of Lake Jackson, 559 S.W.2d 391, 395 (Tex. Civ.
App.--Houston [14th Dist.] 1977, writ ref'd n.r.e.). Findings of fact are reviewable for legal and
factual sufficiency of the evidence by the same standards used to review jury findings. Okon v.
Levy, 612 S.W.2d 938, 941 (Tex. Civ. App.--Dallas 1981, writ ref'd n.r.e.).

 An appellant who challenges the legal sufficiency of the evidence supporting an
issue upon which he did not have the burden of proof must demonstrate that there is no evidence
to support the adverse finding. Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co, 766 S.W.2d
264, 275 (Tex. App.--Amarillo 1988, writ denied). In reviewing a no-evidence point, we consider
only the evidence supporting the finding and disregard all evidence to the contrary. Best v. Ryan
Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). If there is any evidence supporting the
finding, we must overrule the point and uphold the finding. The record reflects some evidence
to support the findings of fraudulent misrepresentation by Fresne. We overrule appellants' legal-sufficiency challenges in points of error three and four.

 When challenging the factual sufficiency of the evidence supporting an adverse
finding upon which it did not have the burden of proof, an appellant must demonstrate that there
is insufficient evidence to support the finding. Raw Hide Oil & Gas, 766 S.W.2d at 275-76. We
will consider and weigh all the evidence in support of and contrary to the finding. Plas-Tex, Inc.
v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). The contested finding will be upheld
unless we find that (1) the evidence is too weak to support the finding, or (2) the finding is so
against the overwhelming weight of the evidence as to be manifestly unjust. Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965). We will not substitute our judgment for that of the trier of fact
merely because we reach a different conclusion. Otis Elevator Co. v. Joseph, 749 S.W.2d 920,
923 (Tex. App.--Houston [1st Dist.] 1988, no writ).

 Upon examination of the record, we find evidence to support each of the findings
of fact set out above. To refute the trial court's findings, appellants, relying on other evidence
in the record, make the following assertions. First, appellants assert that at no time did DRGA
ask any questions about Fresne-Butler-Long's financial condition. However, Don Ray George,
DRGA's president, contradicted this assertion in his testimony. Additionally, from the
documentary evidence one may infer that Fresne-Butler-Long's financial condition was a central
issue in the negotiations: the September letter agreement required Fresne-Butler-Long to produce
a statement of its accountants or bankers indicating its financial ability to meet its obligations
under that agreement. Fresne-Butler-Long never provided this statement to DRGA. 

 Second, appellants assert that Fresne-Butler-Long owned sufficient assets at the
time of Fresne's representations to meet its obligations. These alleged assets consisted of an
option to buy RMC stock, Loving County Disposal stock which had been transferred to Fresne-Butler-Long, and receivables Loving County Disposal owed Fresne-Butler-Long. However, none
of these assets were liquid, marketable, or available to meet Fresne-Butler-Long's obligations to
DRGA. The record evidence indicates that Fresne-Butler-Long was merely a shell without real
financial assets. Moreover, evidence shows that Loving County Disposal's management problems
prevented Fresne-Butler-Long from raising capital to meet its obligations on the project.

 Appellants argue that, at the time of the negotiation of the September letter
agreement, Fresne-Butler-Long had an oral commitment from Canberra Industries, Inc. to finance
the project and, at the time of the negotiation of the December amendment, Fresne-Butler-Long
had secured a written commitment for $400,000 in financing from Canberra. However, this
commitment was subject to multiple conditions that were never met. The conditions to the
commitment were not disclosed to DRGA.

 Finally, appellants assert that DRGA did not rely on Fresne's representations of
Fresne-Butler-Long's financial wherewithal in agreeing to the September letter agreement and the
December amendment. This assertion was refuted by Don Ray George's testimony. 

 We must rely on the trial court to resolve the conflicts in the testimony. In
reviewing the record, we conclude that the trial court's findings of fact are supported by sufficient
evidence and are not so against the great weight and preponderance of the evidence as to be
manifestly unjust. We overrule appellants' factual-insufficiency arguments in their third and
fourth points of error.

 Appellants also argue under point of error four that DRGA waived any claim for
fraud when it entered into the December amendment with knowledge of Fresne-Butler-Long's
financial inadequacies. Appellants seek to apply the rule that a party has no claim for fraud when,
with knowledge of the fraud, it enters into a subsequent agreement with the alleged wrongdoer. 
See B & R Dev., Inc. v. Rogers, 561 S.W.2d 639, 643 (Tex. Civ. App.--Texarkana 1978, writ
ref'd n.r.e.); Haralson v. E.F. Hutton Group, Inc., 919 F.2d 1014, 1028 (5th Cir. 1990). We
do not believe B & R Development applies to the facts in this cause. In B & R Development, a
purchaser of land entered into renewals of promissory notes after discovery of a deficiency in the
acreage from the amount represented in the initial transaction. In this cause, at the time of the
December amendment, DRGA knew only that Fresne-Butler-Long could not make immediate
payment. Fresne-Butler-Long assured DRGA that the financing soon would be coming from
outside sources. Based on this further misrepresentation, DRGA entered into the December
amendment. We conclude that DRGA did not have such knowledge as to waive its claims for
fraud. Accordingly, we overrule appellant's waiver argument in point of error four.

 In their final two points of error, appellants argue that Fresne-Butler-Long and
Fresne are not liable for the present value of the two completion bonuses because (1) under the
unambiguous language of the agreements, they did not guarantee or promise these payments; and
(2) if the language is ambiguous, there is insufficient extrinsic evidence to support a finding of
a guarantee or promise by Fresne-Butler-Long or Fresne. The issue presented is whether the
bonuses are included in Fresne-Butler-Long's guarantee of payment on the "invoices."

 The trial court's findings of facts pertinent to the completion bonuses are as
follows:



11. In order to induce Plaintiff to continue work on the project, LCD entered into
a completion bonus agreement with Plaintiff which was received into evidence
as Plaintiff's Exhibit 7.

. . . .



26. As a further inducement to Plaintiff to provide services, Fresne represented
that Plaintiff would be entitled to receive an additional completion bonus of
$100,000.00.

. . . .



30. Plaintiff and LCD agreed that the completion bonuses would be invoiced to
the responsible parties at the time that they would have been payable if LCD
had otherwise performed under its agreement with Plaintiff.


31. Under the terms of the completion bonuses, Plaintiff's right to receive those
sums existed independent of the success or failure of LCD to obtain the right
to construct the facility.



Based on these findings, the trial court concluded that DRGA was entitled to recover the present
value of the completion bonuses. To reach the conclusion that Fresne-Butler-Long and Fresne
were liable on this portion of the judgment, the trial court must have concluded that, because
Loving County Disposal orally agreed that the bonuses would be invoiced, the bonuses were
included in Fresne-Butler-Long's written guaranty.

 Neither Fresne-Butler-Long nor Fresne is a primary obligor for the bonuses. 
Loving County Disposal's agreement to pay the first bonus was made in October 1989, before
Fresne-Butler-Long and Fresne became involved in the project. Only Loving County Disposal
agreed to pay the second bonus in the December amendment. The September letter agreement
and the December amendment were expressly supplemental. Accordingly, the three instruments
must be construed together. See Guadalupe-Blanco River Auth. v. City of San Antonio, 200
S.W.2d 989, 1003 (Tex. 1947).

 In the October 1989 agreement, the bonus is described as being "in addition to all
normal and regularly invoiced work." (Emphasis added). The agreement is silent as to whether
the bonus would be billed in the final invoice. Instead, the agreement provides that the final
invoice shall be payable ninety days after issuance of all permits.

 In the September letter agreement, Fresne-Butler-Long agreed to execute a
promissory note "for all work done prior to August 1, 1990" and to make payment "within 30
days from the date of each invoice the total amount due for work done subsequent to August 1,
1990." (Emphasis added). 

 In the December amendment, Loving County Disposal agreed to pay the second
bonus within one hundred twenty days of the EPA's acceptance or denial of a permit for the
project. Fresne-Butler-Long agreed to guarantee "payment of all present unpaid invoices and all
invoices from this date forward." (Emphasis added).

 In the construction of written contracts, the primary focus is the intention of the
parties as expressed in the body of the instrument itself. R & P Enters. v. LaGuarta, Gavrel &
Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980); see also State Nat'l Bank v. Morgan, 143 S.W.2d
757, 762 (Tex. 1940). If there is no ambiguity, then construction of the contract is a question of
law for the court. Myers v. Gulf Coast Minerals Management Corp., 361 S.W.2d 193, 196 (Tex.
1962). Whether a contract is ambiguous is a question of law. R & P Enters., 596 S.W.2d at 518.

 If a contract is so worded that it can be given a certain and definite meaning or
interpretation, it is not ambiguous. Alba Tool & Supply Co. v. Industrial Contractors, Inc., 585
S.W.2d 662, 664 (Tex. 1979); Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154, 157
(Tex. 1951). A writing is ambiguous only when, after application of pertinent rules of
interpretation, the face of the writing indicates genuine uncertainty as to which meaning of its
terms is proper. Capitol Rod & Gun Club v. Lower Colorado River Auth., 622 S.W.2d 887, 894
(Tex. App.--Austin 1981, writ ref'd n.r.e.).

 Generally, words and phrases used in a contract are given their ordinary, popular,
and commonly accepted meanings. Pan Am. Ins. Co. v. Cooper Butane Co., 300 S.W.2d 651,
654 (Tex. 1957). However, the intent of the parties is controlling. Fox v. Thoreson, 398 S.W.2d
88, 92 (Tex. 1966). The focus is on the parties' objective intent, not their subjective intent. City
of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex. 1968). A contract
should be construed in its entirety so as to give effect to all its provisions and not render any
provision meaningless. R & P Enters., 596 S.W.2d at 519; Universal C.I.T. Credit, 243 S.W.2d
at 157-58.

 In the earlier written agreements, "invoice" was used to indicate the obligation for
services rendered or to be rendered, and not to indicate the bonuses. The language of the
agreements indicates a distinction between "bonuses" and "invoices." The obligations for the
bonuses was keyed to a trigger event, while the obligation for work performed was billed at the
end of each month as services were rendered. The September letter agreement expressly linked
"invoices" to "work performed."

 "Invoice" is not a term with a special or technical meaning such that expert
testimony is required for interpretation. Generally, the term refers to a bill for goods or services
sold. See Black's Law Dictionary 827 (6th. ed. 1990); Webster's Third New International
Dictionary 1190 (1986). The term "bills" has been interpreted to mean, in its ordinary and
primary sense, accounts for goods sold, services rendered, or work performed. Newman v. San
Antonio Traction Co., 155 S.W. 688, 690 (Tex. Civ. App.--San Antonio 1913, no writ).

 A guarantor is entitled to a strict construction of its obligation; the guaranty may
not be extended beyond its precise terms by construction or implication. Coker v. Coker, 650
S.W.2d 391, 394 n.1 (Tex. 1983); Reece v. First State Bank of Denton, 566 S.W.2d 296, 297
(Tex. 1978); McKnight v. Virginia Mirror Co., 463 S.W.2d 428, 430 (Tex. 1971); Southwest
Sav. Ass'n v. Dunagan, 392 S.W.2d 761, 766 (Tex. Civ. App.--Dallas 1965, writ ref'd n.r.e.). 
When the terms of a guaranty are uncertain, it should be given the construction that is favorable
to the guarantor. Coker, 650 S.W.2d at 394 n.1; Southwest Sav. Ass'n, 392 S.W.2d at 767.

 The only evidence that shows an ambiguity in the term "invoices" is George's
testimony that an oral agreement existed between Loving County Disposal and DRGA that the
first bonus would be added to the final invoice, that Fresne-Butler-Long had notice of this oral
agreement when it entered into the September letter agreement and the December amendment, and
that George believed Fresne-Butler-Long had guaranteed the bonuses in the September letter
agreement and the December amendment. Parol evidence is not admissible to show that the
parties used terms in a sense different from their ordinary meaning or the meaning attached to
them by law. Remington Rand, Inc. v. Sugarland Indus., 153 S.W.2d 477, 483 (Tex. 1941). 
Parol evidence is not admissible to render a contract ambiguous. Id. 

 We conclude that when the agreement is interpreted in its entirety, the term
"invoices" is not ambiguous, but was used by the parties to indicate the obligation for services
rendered or to be rendered. Accordingly, we conclude that Fresne-Butler-Long did not guarantee
payment of the completion bonuses in the December amendment as a matter of law.

 DRGA argues that regardless of whether Fresne-Butler-Long guaranteed the
bonuses, Fresne should be individually liable based on his misrepresentations. We disagree. 
DRGA's monetary remedy for fraud is the amount of damages resulting from its detrimental
reliance on Fresne's representations, i.e., reliance damages. Morriss-Buick Co. v. Pondrom, 113
S.W.2d 889, 890 (Tex. 1939); C & C Partners v. Sun Exploration & Prod. Co., 783 S.W.2d 707,
719 (Tex. App.--Dallas 1989, writ denied). In the instant cause, DRGA's reliance damages are
not the anticipated completion bonuses; rather, they are the value of the additional services DRGA
rendered after Fresne made his representations.

 We sustain appellants' fifth point of error and do not reach appellants' sixth point
of error.



CONCLUSION


 We reverse the trial-court judgment to the extent it held Fresne-Butler-Long and
Fresne liable for the present value of the completion bonuses. We render judgment that DRGA
take nothing by its claims for the present value of the completion bonuses from Fresne-Butler-Long and Fresne. We affirm the remainder of the trial-court judgment.



 

 Jimmy Carroll, Chief Justice


[Before Chief Justice Carroll, Justices Aboussie and Jones]


Affirmed in Part; Reversed and Rendered in Part


Filed: May 12, 1993


[Do Not Publish]
1. [1] Although Loving County Disposal is named in the appeal bond and therefore is an
appellant in this cause, no point of error complains of the judgment as it applies to that entity. 
Accordingly, we review the trial court's judgment only as it applies to Fresne-Butler-Long and
Fresne.
2. [2] Article 2.21 provides in pertinent part: 


 A. A holder of shares, an owner of any beneficial interest in shares, or a
subscriber for shares whose subscription has been accepted shall be under no
obligation to the corporation or to its obligees with respect to:

. . . . 


 (2) any contractual obligation of the corporation on the basis of actual or
constructive fraud, or a sham to perpetrate a fraud, unless the obligee
demonstrates that the holder, owner, or subscriber caused the corporation to be
used for the purpose of perpetrating and did perpetrate an actual fraud on the
obligee primarily for the direct personal benefit of the holder, owner, or
subscriber . . . . 

 Tex. Bus. Corp. Act Ann. art. 2.21 (West Supp. 1993) (emphasis added).